## IN RE RELIEF BILLS.

CONSTITUTIONAL LAW—APPROPRIATIONS—RELIEF BILLS.

The state cannot, in its sovereign capacity, extend aid for charitable, industrial, educational or benevolent purposes to any person, corporation or community, unless such person, corporation or community is under the absolute control of the state.   Hence the appropriation attempted to be authorized by the bill under consideration (H. B. No. 67) is forbidden by sec. 34, art 5, of the constitution.

*Original Proceeding.*

The opinion of the court was delivered in response to the following communication and interrogatory propounded by the governor.

" To the Honorable, the Supreme Court of Colorado:

" Whereas:—Section 3 of article VI of the constitution of the state of Colorado as amended provides that the supreme court shall give its opinion upon important questions, upon solemn occasions, when required by the governor. And,

" Whereas:—A certain house bill, number 67, has been passed by both houses of the tenth general assembly, an exact copy of which is hereto attached, and has been presented to me in due course, for my approval or disapproval as governor. And,

" Whereas:—Upon reading and examining said bill, it appears to me that the same may be unconstitutional, and there is such grave doubt as to its constitutionality that it becomes my duty on my oath to be fully advised before acting. And,

" Whereas:—The honorable attorney general has, to the honorable house of representatives, of date February 4th, given, upon request, his opinion as to said bill, while under consideration in that body, that if enacted into a law it would be unconstitutional and void, an exact copy of which opinion is hereby attached. And,

" Whereas:—Said bill seems to be obnoxious to article V, section 34 of the constitution (p. 247, section 357, Mills') and to article V, section 32 of the said constitution (p. 246, section 355, Mills'). And,

" Whereas:—It is by me considered that the questions raised by and involved in the foregoing premises are important and the occasion solemn.

" Therefore, I, Albert W. McIntire, governor of Colorado, do hereby respectfully require you, the honorable supreme court of Colorado, to give your opinion upon the following question: Is house bill No. 67 obnoxious to article V, sec-

tion 34, or to article V, section 32, of the constitution of this state?

" Very respectfully,

" ALBERT W. McINTIRE,

"Done at Denver, .          " Governor of Colorado.

" March 8th, 1895.

The question was argued by Mr. J. S. CARNAHAN, Mr. J. F. VAILE and Mr. CHARLES HARTZELL, *amici curiæ*, for the bill; and by THE ATTORNEY GENERAL, *contra*.

PER CURIAM. The bill submitted with the foregoing interrogatory propounded by his excellency, the governor, is entitled, " A Bill for an Act to Provide for the Assistance of Agricultural Development and the Relief of the Settlers in Certain Counties of the State, and to Appoint a Commission to Carry out the Provisions Hereof."

Section one makes an appropriation out of the state treasury of $32,250 for the assistance of the farmers in certain counties named therein and specifies the amount to be distributed in each county.

Section two provides that the state treasurer shall draw warrants for these amounts, which warrants are to be payable to the commissioners of the respective counties.

Section three provides that the money shall be used for the purchase of seed and grain, and that no more than $20.00 in value shall be supplied to any one individual, and designates the manner in which applications shall be made and the conditions under which relief may be granted.

By section four the several boards of county commissioners mentioned are required to report to the state auditor, giving credit for the amount of money received by each county, and the amount of seeds and grains purchased and distributed, with the cost of the same.

Section five requires the treasurers of the counties named to give a special bond for the faithful performance of the duties imposed by the act, and prohibits the payment of

money by the state to any such treasurer until such bond be given.

The bill is in the main for the aid of certain farmers located in the eastern part of the state, in what is commonly known as " the rain belt region." These farmers were induced to locate in the territory designated under the belief that the rainfall had increased from year to year until the precipitation was sufficient for the growing of crops without irrigation. Experience has, however, demonstrated the fallacy of this proposition. The rainfall in the locality in question, always slight, was unusually small during the season of 1894. It is a matter of common knowledge, of which the court will take judicial notice, that during the growing season of that year this territory was stricken with a severe drouth, which withered and destroyed all crops, thereby reducing the people to destitution and want. This unfortunate condition, resulting, as it has, from circumstances over which the settlers had no control, appeals strongly to all philanthropic citizens.

Conceding that the case is one of unquestioned merit, and recognizing the absolute power of the legislative branch of the government over appropriations, except as such power is limited by the constitution, the sole question presented for our determination is: Is the bill in question within the power of the legislature to enact?

Upon the invitation of the court, a number of friends of the measure have favored us with brief oral arguments in its support. The attorney general also appeared by request of the court, this officer contending that the bill was unconstitutional. Upon this hearing only two decisions were called to our attention as applicable to the matter under consideration, viz. *The State v. Nelson County,* 1 N. Dak. 88 ; *The State v. Osawkee Township,* 14 Kan. 418.

The former case is strongly relied upon by the promoters of the present legislation. That case evidently received the careful consideration of the court. The opinion is an exhaustive and able presentation of the questions discussed, but, unfortunately for us, those questions are not the same, or

similar, to the questions presented under our constitution. The act under consideration in that court authorized the several counties of the state to issue bonds for the relief of settlers, the bonds to be sold and proceeds invested in seed grain for the benefit of the farmers in the drouth-stricken portions of the state. The grain was not to be supplied as a donation, but promissory notes secured upon real estate, were to be taken in payment for the same. The contention was that the act was unconstitutional—*first*, because the tax made necessary by the statute was for a private and not a public purpose; *second*, that the act was in violation of section 185 of the state constitution, which section reads as follows:

"Neither the state nor any county, city, township, town, school district or any other political subdivision shall loan or give its credit or make donations to or in aid of any individual, association or corporation, *except for necessary support of the poor*, nor subscribe to or become the owner of the capital stock of any association or corporation, nor shall the state engage in any work of internal improvement unless authorized by a two-thirds vote of the people." Const. North Dakota, sec. 185.

The first of the questions presented was decided in the affirmative, the court holding that the tax was for a public purpose. It was further held that the tax came within the exception of the constitutional provision, it being a tax for "the necessary support of the poor."

In the case of *The State v. Osawkee Township, supra*, a different conclusion was reached upon the first proposition. The act considered was "An Act Authorizing Townships to Issue Bonds for Relief Purposes." It provided for the issuance of bonds and indirectly for the levy of taxes in payment of the same. It was declared unconstitutional, as by its terms the public revenue to be raised by taxation was to be applied to the farming industry, the court holding that this was a private, as distinct from a public purpose, and that taxes could not be levied for the former. The opinion was written

by Mr. Justice Brewer, now of the supreme bench of the United States, a jurist whose learning and ability is universally conceded.

While in the two cases cited the question of whether the tax was one for public or private purposes is ably discussed upon reason and authority, conflicting decisions are reached. Moreover, neither these cases nor those cited by either court in support of the conclusions reached are of any particular aid in the solution of the constitutional question principally relied upon in this case, the provision specially called to our attention not appearing in either of the states mentioned and hence not considered by either the Kansas or North Dakota courts. It reads:

"No appropriation shall be made for charitable, industrial, educational or benevolent purposes, to any person, corporation, or community not under the absolute control of the state, nor to any denominational or sectarian institution or association." Sec. 34, art. V, State Const.

This provision is totally dissimilar from those under consideration by either the Kansas or Dakota courts. In fact, similar provisions exist in but few of our sister states and in none are we able to find any decisions upon the question.

The friends of this bill contend that the words of section 34, "not under the absolute control of the state," relate back and qualify the word "appropriation;" that the appropriation to be valid must be under the absolute control of the state. The attorney general, on the contrary, contends that such qualifying words refer only to "corporation or community." According to his view, the corporation or community receiving aid must be under the absolute control of the state. The word "community" as used in this section it is claimed means a society of people having common rights, privileges or interests, either political or ecclesiastical, and that it does not apply to any particular neighborhood or section of country.

In our judgment, the construction contended for by the friends of this bill should not be indulged—*first*, for the reason that under the ordinary and usual rule of construction

the qualifying words " not under the absolute control of the state " should be held to refer to the first preceding subject to which they can be consistently applied, to wit, " person, corporation or community," rather than to be carried back to the word " appropriation ; " *second*, no sufficient reason appears for requiring the appropriation to be under the absolute control of the state, while there are strong arguments in favor of limiting the beneficiaries to those institutions and associations under state control.

An examination of the proceedings of the constitutional convention with reference to this section, in the light of the facts as they then existed, furnishes a strong, if not a conclusive, argument in support of the conclusion indicated. The section as first introduced reads as follows, without the parenthetical clause : " No appropriation shall be made for charitable, educational or benevolent purposes to any person or community [not under the absolute control of the state] nor to any denominational or sectarian institution, corporation or association." The words in brackets, " not under the absolute control of the state," were inserted as an amendment to the provision as originally drafted. This amendment was essential in order that the state might support the educational and other institutions established and fostered by the territorial government. There being no disposition to withhold state aid from these institutions, the amendment became necessary in order that such aid might be extended in the future.

It is clear that the section as originally prepared absolutely prohibited the state from extending aid for charitable, educational or benevolent purposes, and it seems equally clear that the amendment was not for the purpose of changing the original intent of the section, except in so far as the same became necessary to authorize the support of those persons, corporations, etc., which were then or might in the future be brought under the control of the state.

We find the principle underlying this bill condemned by our constitution as unsafe and dangerous. It would permit relief to the silver miner whose occupation has been destroyed

by hostile legislation of congress; to the mechanic who has lost his tools; to cities consumed by fire, and to a railroad company whose road has been destroyed by an act of God. And, however strongly the unfortunate condition of these farmers may appeal to the members of this court as individuals, as judges sworn to support the constitution the question presented is one purely of constitutional law. We think it is clear that the state cannot, in its sovereign capacity, extend aid for charitable, industrial, educational or benevolent purposes to any person, corporation or community, unless such person, corporation or community is under the absolute control of the state, and that the appropriation attempted to be authorized by the bill under consideration is forbidden by section 34 of article V of our state constitution.

We have not reached this conclusion without much reluctance. The condition of the people sought to be benefited by this act appeals to all to overlook the rules and principles established by our state constitution, but the question presented must be determined by the court without reference to the hardships the conclusion may work in individual cases.