Argued June 20, decided July 1, 1913.

## McMAHAN *v.* OLCOTT.

(133 Pac. 836.)

**Statutes—Special and Local.**

1. Except where prohibited by the Constitution, a law may be local or special.

**Statutes—Special and Local—Subjects.**

2. General Laws of 1913, page 215, making an appropriation out of the state's general funds for an irrigation project and reclamation of lands, is not within Article IV, Section 23, of the Constitution prohibiting special or local laws "for assessment and collection of taxes" and in thirteen other enumerated cases.

**States—Loaning Credit.**

3. General Laws of 1913, page 215, making an appropriation for completion, through the desert land board, of a project to irrigate and thereby reclaim certain lands, the state to be paid for water rights, is a provision for a state enterprise and so does not contravene Article XI, Section 7, inhibiting the legislature loaning the credit of the state.

**Constitutional Law—Privileges and Immunities.**

4. Article I, Section 20, of the Constitution, inhibiting any law granting to any citizen or class of citizens privileges or immunities which on the same terms shall not equally belong to all citizens, is not contravened by General Laws of 1913, page 215, providing for completion by the state of an irrigation project which it had taken over, because providing for allowance of credits to all those who had made payments to its predecessor in title for water rights, wherewith such predecessor had commenced the improvement.

Waters and Watercourses—Reclamation of Arid Lands—Statutes.

5. General Laws of 1913, page 215, providing for reclamation by the state of arid land by an irrigation project, is for a public purpose and so within the powers of the legislature.

Constitutional Law—Distribution of Powers—Wisdom or Policy of Law.

6. The courts cannot question the wisdom or policy of a law, this being a legislative or political question.

From Marion: William Galloway, Judge.

Statement by Mr. Justice McNary.

As a citizen and taxpayer of the State of Oregon, L. H. McMahan brings this suit to enjoin the Secretary of State and the State Treasurer of the State of Oregon from disbursing an appropriation of public funds authorized by the provision of Chapter 119, page 215, of the General Laws of Oregon for 1913. Plaintiff in his amended complaint alleges that by virtue of that act the legislature attempted to confer upon the desert land board a right to expend $450,000 out of the state's general funds for the purpose of constructing, operating, and maintaining an irrigation project and reclaiming 23,000 acres of land in Crook County, Oregon, known as the Columbia Southern Project.

It is asserted that in 1902 the state land board entered into a contract with the Three Sisters Irrigating Company for the reclamation of certain desert lands in said county, aggregating 27,000 acres; that agreeably to said contract the irrigating company sold water rights for approximately 18,000 acres of the said land and for about 1,400 acres of land owned by private parties which is not included in the reclamation scheme; that thereafter said irrigating company, having failed to observe the terms of the contract, passed into the hands of a receiver, whereupon the Columbia Southern Irrigating Company assumed the undertaking, only to fail, and assigned its rights to the

Oregon, Washington & Idaho Finance Company, which in turn failed to consummate said irrigating project, and in consequence transferred its rights to the State of Oregon, which subsequently entered into a contract looking to the completion of the project with Alma D. Katz, who likewise was unable to carry out the project.

Asserting that not to exceed 7,000 acres of the land embraced in said reclamation scheme are patented to the state and that of this total but 5,000 acres deeded to private persons can be irrigated, plaintiff continues with the statement that of the 23,000 acres proposed to be reclaimed 13,000 acres have been sold and contractional rights have been vested in private parties adversely to the state, and that the board has no contract, deed, nor other claim by which it can irrigate said lands or compel contribution from the owners thereof toward the construction, operation, or maintenance of said irrigation project. The concluding allegations recite that the project includes about 5,000 acres of land, which the board intends to irrigate and sell to individuals at a price not to exceed $50 per acre, whereas the land when so irrigated will be worth not less than $100 per acre; and that the defendants will, unless restrained by an order of the court, use such funds in the project heretofore alluded.

The answer of the defendants admits the major portion of the plaintiff's amended pleading, except wherein they aver only 5,600 acres are patented to the state, of which 4,400 acres are irrigable, and 2,314.63 acres have been deeded to private parties; that of the 23,000 acres proposed to be reclaimed by the desert land board, pursuant to the provisions of the act in question, water rights for about 13,000 acres were contracted to individuals by the Southern Oregon Irrigating Company or its predecessors, and that a small payment made by said persons and said com-

pany failed to complete the project, and no further payments were made; that the act authorizes the board to permit such individuals to consummate their water rights at such price as to the board may seem proper, allowing credit thereon for the amount originally paid to the defaulting company. Defendants deny any vested water rights exist in said private parties, and, unless permitted to come under the terms of said act or have their money refunded and the land resold, such persons would have no interest in said water rights or lands and would lose all sums paid. Answering further, defendants allege the project includes at least 16,000 acres of land, which the board intends to irrigate, reclaim, and sell to private persons; and, when so irrigated, the land will be worth not less than $100 per acre.

After the issues were joined, a stipulation was entered into by counsel on behalf of the parties litigant wherein it was agreed that the legislative act under consideration was an offspring of the session of 1913; that the project included at least 6,000 acres, which the board intends to irrigate and reclaim and sell to private persons; that when so irrigated the land would be sold for not less than $100 per acre; and that only 5,600 acres are patented to the state, of which 4,400 acres are irrigable, and 2,314.63 acres have been sold to private parties.

Following the submission of the case, the trial court entered a decree dismissing the suit, from which adjudication plaintiff appeals, affirming as error the order of the court adjudging the act in controversy as being in accordance with the Constitution of the state.

Affirmed.

For appellant there was a brief and an oral argument by *Mr. L. H. McMahan, in propria persona.*

For respondents there was a brief and an oral argument by *Mr. Andrew M. Crawford,* Attorney General.

Mr. Justice McNary delivered the opinion of the court.

Descriptively the project having our attention is situated in Crook County, Central Oregon, on the west side of the Deschutes River, embracing an area about 15 miles long and from six to eight miles wide. Two lines of railroad parallel the district, thus affording transportation facilities, while a number of small towns near by furnish abundant opportunities for marketing. The chief source of water supply for the project is Tumalo Creek, which is one of the tributaries of the Deschutes River, having its source high in the Cascade Mountains to the west.

1, 2. The first objection urged by plaintiff to the provisions of Chapter 119, page 215, of the General Laws of Oregon for 1913, is rooted in the proposition that the legislative act is a special or local law within the meaning of the Constitution, as inhibited by Section 23 of Article IV. Before considering the act in its relation to our Constitution, we believe it important to observe that the legislature of a state has power to enact any laws that are not expressly or by necessary implication prohibited either by the Federal Constitution or by the Constitution of the state enacting the law, or, stated in language more terse, state Constitutions are limitations upon the legislative powers of the state. This principle is axiomatic, necessitating no reference to authorities. Section 23 of Article IV of the Constitution enumerates various subjects under 14 subdivisions wherein the passage of special or local laws are prohibited.

Counsel in his brief does not specify any particular subdivision of Section 23 of the organic law inimical of the legislative act, but in his oral argument par-

ticularized Subdivision 10, which reads: "For the assessment and collection of taxes for state, county, township or road purposes." In truth, this is the only subdivision of the section in which reference is made to the subject of taxation. Doubtlessly the framers of the Constitution intended by this provision to inhibit the legislature from enacting any special or local law concerning the methods to be employed in the assessment and collection of taxes, which would conflict with the methods of assessing and collecting taxes as contemplated by the general law: *Simon* v. *Northup*, 27 Or. 500 (40 Pac. 560, 30 L. R. A. 171). Applying his interpretation, which has the sanction of reason and judicial authority, we are unable to comprehend wherein the legislative enactment by reasons of Subdivision 10 or other subdivision of Section 23 is in violation of the Constitution. Unless a positive prohibition exists in the fundamental law, the legislature has an almost unlimited field for operation, even though the law may be special or local in its character. We feel justified in saying that the statute under consideration does not contravene Section 23 of Article IV of the Constitution.

3. It is next objected that the act is antagonistic to Section 7 of Article XI of the state Constitution, which provides: "The legislative assembly shall not loan the credit of the state, nor in any manner create any debt or liabilities which shall singly or in the aggregate with previous debts or liabilities exceed the sum of $50,000, except in the case of war, or to repel invasion or suppress insurrection; and every contract of indebtedness entered into or assumed by or on behalf of the state, when all its liabilities and debts amount to said sum, shall be void and of no effect." We are unable to see that this act in any manner loans the credit of the state. It is true that a large appropriation of public funds has been made for the completion

of a project to irrigate and thereby reclaim certain lands, but is is purely a state enterprise. No credit is extended to private sources to promote private schemes. The act directs the state to protect its title to the property included in the project and to make all arrangements necessary for the proper construction and completion of the irrigation works to reclaim the land. The state through the desert land board fixes the price to be paid for water rights, and, from the date of reclamation of any tract, a valid lien is created in favor of the state. That the legislature was mindful of the constitutional restrictions contained in Section 7 of Article XI is evident from the provision of the act which enjoins the desert land board so to fix the lien in favor of the state that when added to the amount realized from private lands shall total a sum sufficient to insure the state a return for all moneys expended by it in the reclamation of the lands embraced in all the project. The act further provides that "all money received as maintenance fee shall be applied to the cost of maintaining said project. All money received for the purchase of land or water rights in said project shall be deposited in the general fund of the state treasury until all expenses incurred by the state in connection with said project, including" interest at the rate of "six per cent" per annum, " * * on all moneys advanced, * * shall have been repaid, after which time all money, except maintenance, received from the project shall be deposited in the reclamation fund."

From a recital of the main features of the law pertaining to the nature of the undertaking, we are of the opinion the enterprise contemplated a sovereign work which is in no wise antagonistic to the wholesome mandates contained in Section 7 of Article XI of the Constitution.

4. As an additional objection to the act, plaintiff argues that the enactment is without the purview of legislative authority to "lay a tax upon all the people and to expend the money for the profit of a few," thus invoking Section 20 of Article I of the organic law, which reads: "No law shall be passed granting to any citizen or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens." We think this point introduces the most serious aspects of the case. Plaintiff with much earnestness contends that the act affords undue advantages to a favored few in Crook County at the expense of all other taxpayers of the state.

As a matter of history calculated to shed a light along the way, we deem it proper to animadvert that the Carey Act adopted by the Congress of the United States provides that the federal government shall grant to each state such desert land as lies within its boundaries, not exceeding 1,000,000 acres, upon the condition that the state will cause the lands to be reclaimed by the construction of irrigation systems. At the biennial legislative sessions of this state held in 1901 (Laws 1901, p. 378) and in 1905 (Laws 1905, p. 401), the people of the state, through their chosen representatives, committed this commonwealth to the policy of reclaiming its arid lands, while the statute under consideration attempts to apply that policy to a specific locality under a plan conceived by the legislature to be both adaptable and practicable.

An examination of the provision of the act reveals that: "Any person who holds a contract with the Columbia Southern Irrigating Company, or its successors in interest, for any tract in the project, may execute a new contract with the state, for the reclamation, under the provisions of this act, of the land described in his original contract with said company, receiving credit thereon for all money paid to said

company under said original contract; or may surrender his contract and receive, in cash, the full amount of money paid to said company on such contract, but no such refund payments shall be made by the board prior to December 1, 1914." From the language of the statute plaintiff contends special privileges are bestowed upon persons holding contracts theretofore had with the Columbia Southern Irrigating Company or its successors in interest and not granted to others. We think counsel's position is untenable, because the act operates without discrimination upon all persons placed in the same circumstances.

The facts stipulated by counsel show that about 2,300 acres lying within the project have been deeded to private parties. Yet the statute provides the desert land board shall make necessary contracts for the sale and delivery of the water to lands of said private parties. While the persons holding prior contractual rights have a call upon the state for the allowance of credits upon all money paid to the defaulting companies under the original contract, yet they·must enter into a new contract with the state and otherwise conform to the rules prescribed by the desert land board. Thus it will be seen all persons who have prior contracts are treated alike and that as a class no special privileges are granted to one and withheld from another, but that all coming within the prescribed class enjoy the same privileges and immunities: *In re Fred Oberg,* 21 Or. 406 (28 Pac. 130, 14 L. R. A. 577); *State v. Thompson,* 47 Or. 492 (84 Pac. 476, 4 L. R. A. (N. S.) 480, 8 Ann. Cas. 646).

Again, we must not be unmindful of the public official acts of a co-ordinate department of the state government which disclose that the state acquired by deed from the successor in interest of the Columbia Southern Irrigating Company all its rights and inter-

65 Or.—35

est in connection with said project which included valuable water rights and improvements in connection with the project. At the time of the acquirement of this property by the state, certain individuals had made partial payments and held contracts of purchase with the company or its predecessors in interest on land lying within the reclamation district. The state in acquiring the proprietary rights of the defaulting companies obligated itself, as a matter of justice, to protect the rights of the individuals who by their contributions had brought into existence the very property conveyed to the state. To allow these private parties credit for all money paid on their contracts with the companies with which they had dealings is not granting a special privilege but simply placing them in the same position and on equal footing with those persons who may subsequently acquire rights of the state within the project. Anything short of this would be granting special privileges to those acquiring rights subsequent to the enactment of the statute in question and placing those who have made possible the reclamation under a grievous disadvantage.

5. The remaining objection to the statute is predicated upon the proposition that there are limits to the powers of the legislatures in matters of taxation, not directly imposed by written constitutions, and that any devotion of the state's activities to private ends is such a perversion of its duties as to be utterly void: Gray, Limitations of Taxing Power, §§ 25, 169. Admittedly at times it is difficult to define the line of separation between a purpose which is private and one which is public, yet, upon the general undertaking of reclamation of arid lands by irrigation, we think the purpose is public: *Cookinham* v. *Lewis,* 58 Or. 484 (114 Pac. 88, 115 Pac. 342).

In *Fallbrook Irr. Dist.* v. *Bradly,* 164 U. S. 112 (41 L. Ed. 369, 17 Sup. Ct. Rep. 56), the court enunciates

the doctrine that the irrigation of arid lands is a public purpose and the water thus used put to public use.

"Millions of acres of land otherwise cultivable must be left in their present arid and worthless condition, and an effectual obstacle will therefore remain in the way of the advance of a large portion of the state in material wealth and prosperity. To irrigate and thus to bring into possible cultivation these large masses of otherwise worthless lands would seem to be a public purpose and a matter of public interest, not confined to the land owners, or even to any one section of the state. The fact that the use of the water is limited to the land owners is not therefore a fatal objection to this legislation. It is not essential that the entire community or even any considerable portion thereof should directly enjoy or participate in an improvement in order to constitute a public use": Gray, Limitations of Taxing Power; *In re Madera Irr. Dist.,* 92 Cal. 296, 307 (28 Pac. 272, 675, 14 L. R. A. 755, 27 Am. St. Rep. 106); *Cummings* v. *Hyatt,* 54 Neb. 35 (74 N. W. 411); Kinney, Irrigation, vol. 3, 1340, 1341; *Cookinham* v. *Lewis,* 58 Or. 484, 494, 498 (114 Pac. 88, 115 Pac. 342); *Clark* v. *Nash,* 198 U. S. 361, 368, 369 (49 L. Ed. 1085, 25 Sup. Ct. Rep. 676, 4 Ann. Cas. 1171).

We think it is plainly apparent, from an inspection of the act, that its object is for the benefit of the public, even though incidental advantages may accrue to a few land owners within the zone of the project beyond those enjoyed by the general public.

6. Furthermore, the principle is well established that courts are never at liberty to question the wisdom or policy of an act of the legislature, their duty being solely to enforce such acts as are passed to the extent to which they are found to be constitutional: 8 Cyc. 766; 2 Willoughby, Constitution, § 577.

Whether the policy set afloat by the state in any given legislative or initiative enactment is laden with

sound judgment designed to promote the welfare of the people or is fraught with dangerous consequences is a legislative or political question and not within the review of the courts so long as it is not in contravention of the Constitution or subversive of natural justice and common right.

The decree of the Circuit Court should be affirmed.

AFFIRMED.

MR. CHIEF JUSTICE MCBRIDE and JUSTICES BEAN and EAKIN concur.

MR. JUSTICE BURNETT delivered the following specially concurring opinion:

This suit was instituted by the plaintiff as a citizen and taxpayer of the state against the defendants as members of the desert land board to prevent them from expending an appropriation of $200,000 for the year 1913, and an additional sum of $250,000 for the year 1914, in the reclamation of certain desert lands in Crook County, belonging to the state, and to be acquired by it under the desert land law of the general government, commonly known as the Carey Act. The board is said to be proceeding under Chapter 119, Laws of 1913, being "An act to provide for the construction, operation and maintenance and disposal, by the State of Oregon, of the irrigation project in Crook County, Oregon, commonly known as the 'Columbia Southern Project.'" The act purports to be a provision for the reclamation of lands included in Oregon Desert Land Selection List No. 13.

The complaint alleges, in substance, that at various times the state, under then existing statutes, contracted with sundry concerns for the reclamation of these lands, all of which contracting parties failed. It is agreed that 5,600 acres are patented to the state, of which 4,400 acres are irrigable, and 2,314.63 acres have

been deeded to private parties. It is alleged by the complaint and admitted that the defendant Olcott, Secretary of State, threatens to and will, unless restrained, draw warrants on the State Treasurer, and the latter officer will pay those warrants to the extent of $450,000 providing for the construction, operation, and maintenance of the irrigation project described in the act above mentioned. The prayer of the complaint is that the defendants be enjoined and restrained from drawing or paying any such warrants. The answer, together with the stipulation as to the facts, leave no issue to be tried, except the one of law as to whether it is constitutional for the state to provide for the reclamation of the lands in question. The Circuit Court, having heard the parties, entered a decree dismissing the suit, and the plaintiff appeals.

As a foreword, it may be set down that the state Constitution is a restrictive instrument and not a grant of power, so that, unless forbidden by the Constitution, the legislature may pass any act which seems to it proper. Further, the court will not hold an act of the legislative branch of the government unconstitutional, unless it is clearly violative of that fundamental law; and lastly that, if an act is constitutional in one part and not in another, the portion which complies with the fundamental law will be enforced and the remainder disregarded. These are judicial platitudes so well settled that it is unnecessary to cite precedents in support of them.

At the argument the plaintiff contended that the law in question was a local and special law in the interest of residents of the community in which the land mentioned is situated. The legislative assembly in its discretion may enact laws of that nature, unless forbidden by the state Constitution. That instrument prohibits the legislative assembly from passing them in certain enumerated cases: Sec. 23, Art. IV, Con-

stitution.   The only instance relied upon in the argument was that against the passage of such a law "for the assessment and collection of taxes for state, county, township or road purposes." The statute assailed by the plaintiff does not in any manner refer to the method of assessment and collection of taxes for the purpose indicated.   So far as that is concerned, the appropriation attacked is made out of the general fund of the state treasury not otherwise appropriated. The taxes for this fund are levied and collected under a general law on that subject.   Hence the act is not amenable to that objection.

Under the authority of *Cookinham* v. *Lewis*, 58 Or. 484 (114 Pac. 88, 115 Pac. 342), the reclamation and irrigation of arid lands is a matter of public and general interest and an appropriate object of state legislation.   The legislative assembly is well within its powers in providing for the improvement and reclamation of the property of the state acquired or to be acquired from the general government under the provisions of the desert land act.   It would be a lawful application of public funds to expend them for such purpose.   The proposed disbursement of the money of the state for the purpose indicated is all of which the plaintiff complains.   It is the mere expenditure of money for the improvement of the state lands, and hence is not loaning the credit of the state within the meaning of Section 7, Article XI, of the state Constitution.   The desert land board may properly expend in a constitutional manner the funds provided for the purpose in question, the same as any other appropriation made by the legislative assembly.   If afterward an attempt shall be made to administer the law or to dispose of the state lands in an unconstitutional manner, it will be time enough to decide that

question if properly raised; but that matter is not presented by the pleadings before us.

The decree of the Circuit Court will be affirmed.

AFFIRMED.

MR. JUSTICE RAMSEY concurs in this opinion.