Submitted on briefs June 26, affirmed July 31, 1923.

## KINNEY v. ASTORIA ET AL.

(217 Pac. 840.)

**Constitutional Law—Statute Presumed Valid Until Contrary is Shown Beyond Rational Doubt.**

1. Every possible presumption of validity will be brought to the aid of a questioned statute, and the presumption will prevail until the contrary is shown beyond a rational doubt.

**Constitutional Law—Statute not Held Unconstitutional Unless Conflict With Constitution is Clear, Plain and Palpable.**

2. A statute will not be held unconstitutional unless there is a clear, plain and palpable conflict between the statute and the Constitution.

**Constitutional Law—Federal Constitution an Instrument Granting Power.**

3. The national Constitution is an instrument granting power.

**Constitutional Law—State Constitution an Instrument Limiting Power.**

4. The state Constitution is an instrument limiting power.

**Constitutional Law—Court cannot Inquire into Wisdom of Legislation.**

5. If the power exercised by the legislature in the enactment of a statute is legislative in character, the court cannot inquire into the wisdom of the legislation, but can enforce only such limitations as the national and state Constitutions impose.

**Taxation—Taxes cannot be Appropriated for Private Purposes, Since National and State Constitutions Confine Power to Public Purposes.**

6. Taxes cannot be appropriated for private purposes, since both national and state Constitutions either expressly or impliedly confine the exercise of the power of taxation to public purposes.

**Constitutional Law—Legislative Determination That Appropriation is for a Public Purpose is not Conclusive on the Courts.**

7. Legislature's determination that a statute appropriates money for a public purpose is not conclusive on the courts.

**Constitutional Law—Court must Base Decision as to Whether Appropriation is for Public or Private Purpose on Matters Appearing on Face of Statute or Facts of Which Judicial Notice may be Taken.**

8. A court, in passing on question of whether an appropriation is for a public or a private purpose, must base its decision on the matters appearing on the face of the statute, and possibly facts of which judicial notice may be taken, and ordinarily cannot make an independent inquiry as to facts which do not appear in the statute, and base its holding that the statute is unconstitutional upon such extraneous facts.

**Taxation—Whether Tax is for Public or Private Purpose Dependent on Essential Character of its Direct Object.**

9. Whether a tax is for a private or a public purpose must be determined by the essential character of its object.

**Municipal Corporations—"Municipal Corporations" Mere Political Subdivisions of State.**

10. Municipal corporations, such as cities, are merely instrumentalities of the state, established for the convenient administration of local government, and are mere political subdivisions of the state, created by authority of the state for the purpose of exercising a part of its powers, notwithstanding the right of the cities and towns under the Constitution to adopt their own charters.

**Municipal Corporations—Property Owned by Municipality is Public Property, and not Property Owned by Inhabitants.**

11. Property owned by a city is public property, and is not the private property of the residents of the city, with title in the municipality as a trustee for their benefit.

---

6. Appropriation of public money for private purpose, see note in 1 Ann. Cas. 935.

States—Purpose of Appropriation must Pertain to Tax-levying
    District.

12. The public purpose for which an appropriation is made
must pertain to the tax-levying district, since the legislature can-
not by statute divert city taxes to a county purpose, nor city or
county taxes to a state purpose.

States—Appropriation of State Taxes to City Where Public and
    Private Property was Destroyed by Fire Held a Valid Ap-
    propriation for a "Public Purpose."

13. Where more than $11,000,000 worth of property in a city,
including public property valued at $1,500,000, had been destroyed
by a fire, leaving the city and its people financially prostrate, with
property assessed at $8,000,000, and weighted with a municipal
debt of more than $5,500,000, and it was impossible for the city
to raise money by placing additional liens upon its property, Laws
of 1923, page 432, making an appropriation of state taxes to the
city to aid it in the payment of interest on bonds to be issued
by the city to obtain funds wherewith to rebuild, reconstruct,
and replace the public property, and to provide a sinking fund
for the retirement of such bonds, with the appropriation measured
by the amount of state taxes collected from persons and upon
property within the limits of the city, held a valid appropriation
of taxes for public purposes, since the people of the state at large
had an interest in replacing the public property of the city so
that the city could at the earliest possible moment resume its
former normal condition, and effectively perform its duties as one
of the governmental agencies of the state.

Constitutional Law—Statute Making Appropriation to City Held
    not Violative of Constitutional Provision Relating to Exclusive
    Privileges.

14. Laws of 1923, page 432, appropriating state taxes to a city
where much of the private and public property was destroyed by
fire, to be used by the city in payment of interest on bonds to
be issued for the reconstruction of the public property, and in
providing a sinking fund for retirement of bonds, held not viola-
tive of Constitution, Article I, Section 20, relating to exclusive
privileges.

Taxation—Statute Making Appropriation to City Where Private
    and Public Property Destroyed by Fire Held not Violative of
    Constitution as to Uniformity.

15. Laws of 1923, page 432, appropriating state taxes to city
where much of the private and public property was destroyed by
fire, to be used by the city in payment of interest on bonds to
be issued for the reconstruction of the public property, and in
providing a sinking fund for retirement of bonds, held not viola-
tive of Constitution, Article I, Section 32, requiring uniformity of
taxation.

Statutes—Statute Making Appropriation to City Where Property
    was Destroyed by Fire Held not Void as a Local or Special
    Law for Assessment and Collection of Taxes—"Local Law"—
    "Special Law."

16. Laws of 1923, page 432, appropriating state taxes to city
where much of the private and public property was destroyed by

fire, to be used by the city in payment of interest on bonds to be issued for the reconstruction of the public property, and in providing a sinking fund for retirement of bonds, *held* not violative of Constitution, Article IV, Section 23, subdivision 10, prohibiting local and special laws for the assessment and collection of taxes.

States—Statute Making Appropriation to City Where Property was Destroyed by Fire Held not Void as a Statute Lending the Credit of the State—"Loan of Credit of State."

17. Laws of 1923, page 432, appropriating state taxes to city where much of the private and public property was destroyed by fire, to be used by the city in payment of interest on bonds to be issued for the reconstruction of the public property, and in providing a sinking fund for retirement of bonds, *held* not violative of Constitution, Article XI, Section 7, prohibiting the legislature from lending the credit of the state.

Statutes—Statute Making Appropriation to Enable City to Reconstruct Public Property Destroyed by Fire Held not Void as an Assumption of a City Debt—"Assumption of Debt."

18. Laws of 1923, page 432, making an appropriation to a city where most of the private and public property was destroyed by fire, to enable the city to pay interest on bonds to be issued for reconstruction of the public property, and to create a sinking fund for the retirement of the bonds, *held* not violative of Constitution, Article XI, Section 8, prohibiting the state from assuming the debts of any county, town, or other corporation, since, even if the statute operates as a *pro tanto* assumption of a future debt, such debt does not come within the Constitution; the statute merely appropriating money to pay for a state interest.

From Marion: G. G. BINGHAM, Judge.

In Banc.

This is a controversy which the parties submitted to the court without suit or action in accordance with the procedure outlined in Sections 193 to 195, inclusive, Or. L., which by the terms of Section 412, Or. L., are also made applicable to controversies which might be the subject of a suit.

The facts upon which the controversy depends are as follows: A very considerable portion of Astoria was, on December 8, 1922, literally swept by a fire. Because of this disaster, the legislature enacted Chapter 280, Laws of 1923, which by force of an emergency clause became effective on February 26,

1923, when the measure was approved by the Governor. The controversy involves the question of the constitutionality of this statute.

The plaintiff is a citizen of the United States and a resident and inhabitant of the State of Oregon, has been and is the owner of real and personal property which is now liable for taxes and upon which taxes have been regularly paid. The defendant City of Astoria is one of the principal cities of the state; and the defendant, Sam A. Kozer, is the Secretary of State of the State of Oregon.

On or about May 1, 1923, the treasurer of Clatsop County paid to the state treasurer one half of the amount of all state taxes due the state from Clatsop County including taxes collected from persons and upon property within the corporate limits of Astoria assessed for the year 1922.

Immediately upon payment by the treasurer of Clatsop County to the state treasurer of the first one half of taxes due from Clatsop County to the state, the state tax commissioner ascertained and certified to the Secretary of State what amount and proportion of the state taxes charged to Clatsop County had been apportioned to persons and property wholly within the corporate limits of Astoria; and accordingly the state tax commissioner certified that the amount so apportioned aggregated the sum of $77,591.06; and subsequently on or about June 4, 1923, the Secretary of State, pursuant to the provisions of Chapter 280, drew a warrant on the state treasurer payable to the City of Astoria for one half of the amount named in such certificate, or the sum of $38,795.53, and this warrant for $38,795.53 was subsequently paid by the state treasurer to the City of Astoria.

The defendant Kozer as Secretary of State intends to and will, immediately upon receipt by the state treasurer of the second half of the state taxes due from Clatsop County, draw a warrant on the state treasurer payable to the defendant City of Astoria for a sum of money equal to the remaining one half of the amount named in the certificate of the state tax commissioner, unless he is restrained from so doing. The decree of the trial court was for the defendants. The plaintiff appealed.    AFFIRMED.

For appellant there was a brief over the name of *Messrs. G. C. & A. C. Fulton.*

For respondent City of Astoria there was a brief over the name of *Mr. Howard K. Zimmerman.*

For respondent Sam A. Kozer there was a brief over the names of *Mr. I. H. Van Winkle,* Attorney General, and *Mr. Willis S. Moore,* Assistant Attorney General.

HARRIS, J.—The enactment, Chapter 280, Laws of 1923, is prefaced with a preamble which recites that on December 8, 1922, the City of Astoria was swept by a fire which destroyed more than $11,000,000 worth of property; that included in the property so destroyed was municipal public property of the estimated value of $1,500,000,

"which said public property, in order to preserve the health, safety and security of the people of said city, must be immediately replaced and rebuilt"; that the fire "has left the City of Astoria and its people financially prostrate, with a present total assessed valuation of less than eight million dollars ($8,000,-000), against which there now stands a municipal

debt of more than five million five hundred thousand ($5,500,000)'';

that this large bonded indebtedness makes it impossible for the city to place additional liens upon its property for the purpose of raising money; and that it is necessary for the state to give relief in order to preserve and encourage the reconstruction of the city and to preserve its financial credit.

After making the recitals mentioned, it is declared in Section 1 of the body of the act that for a period of seven years, commencing with the year 1923, all state taxes collected from persons and upon property within the corporate limits of Astoria are granted and appropriated by the state to the City of Astoria.

The statute commands, in Section 2, that, in each of the seven years, immediately after the payment by the treasurer of Clatsop County to the state treasurer of the first one half of the state taxes due from Clatsop County the state tax commissioner shall examine the proper records on file in his office and ascertain and certify to the Secretary of State

"what amount and proportion of the state taxes charged to Clatsop County in said year have been apportioned, assessed, levied or collected from persons and upon property wholly within the corporate limits of the City of Astoria, and thereupon the Secretary of State shall forthwith draw a warrant upon the state treasurer payable to the City of Astoria for a sum of money equal to one-half the amount named in said certificate of said state tax commissioner; and thereafter, to wit: Immediately upon receipt of payment by the state treasurer of the second half of the state taxes due from Clatsop County in said year, the Secretary of State shall draw a warrant on the state treasurer payable to the City of Astoria for a sum of money equal to the remaining half of the moneys due the City of Astoria in said year under the provisions of this act; pro-

vided, however, that the moneys hereby appropriated to said city in any one year of the period named in section 1 shall not exceed the amount of the moneys appropriated in 1923.''

Section 3 is as follows:

''The moneys herein and hereby granted and appropriated to the City of Astoria are declared to be a trust fund for the purpose of aiding the City of Astoria in paying the interest and sinking fund upon an issue or issues of bonds, which said bonds are to be used exclusively for rebuilding, reconstructing and replacing public property in the City of Astoria, which was destroyed by fire on the eighth day of December, 1922. The use or diversion of such moneys for any other purpose whatsoever is hereby prohibited.''

There are no issues of fact submitted for decision. The parties agreed upon all the facts. The question for decision is whether, based upon these agreed facts, the statute is constitutional. The plaintiff says that the act conflicts with several sections of the state Constitution.

1, 2. We begin the inquiry by reminding ourselves that every possible presumption of validity will be brought to the aid of a questioned statute and that the presumption of validity will prevail until the contrary is shown beyond a rational doubt. In order to avoid the possibility of encroaching upon the domain of the legislative department, the judicial department will never exercise its power of declaring an act of the legislature unconstitutional unless there is a clear, plain and palpable conflict between the statute and the Constitution: *Cook* v. *Port of Portland,* 20 Or. 580, 582 (27 Pac. 263, 13 L. R. A. 533); *Simon* v. *Northup,* 37 Or. 487, 495 (40 Pac. 560, 30 L. R. A. 171); *State* v. *Cochran,* 55 Or. 157, 201 (104 Pac. 419, 105 Pac. 884).

The statute under examination appropriates state taxes each year and uses the appropriation to aid Astoria in paying the interest on and in providing a sinking fund for the retirement of bonds to be issued and sold by the city, the proceeds of which bonds are to be used exclusively for rebuilding, reconstructing and replacing public property in the city. The amount of the continuing appropriation is measured by the amount of state taxes collected from persons and upon property within the corporate limits of Astoria, but with the limitation that the appropriation shall not in any year subsequent to 1923 exceed the amount appropriated in that year. Reference in the statute to the amount of state taxes collected from persons and upon property in Astoria serves no purpose except to measure the amount of the appropriation and is not in any other respect a circumstance which in anywise affects the validity of the statute. If the enactment in express terms appropriated out of the state taxes, each year for a period of seven years, the definite sum of $77,591.06 it would not be, so far as any of the legal questions are concerned, different from its present form.

Appropriation of state taxes involves an inquiry into the power of taxation; for the right to appropriate public funds is no greater than the right to tax: *Loan Assn.* v. *Topeka,* 20 Wall. (U. S.) 655 (22 L. Ed. 455, see, also, Rose's U. S. Notes); *Woodall* v. *Darst,* 71 W. Va. 350 (77 S. E. 264, 80 S. E. 367, Ann. Cas. 1914B, 1278, 44 L. R. A. (N. S.) 83). Can the whole state be taxed for the reconstruction, rebuilding and replacement in whole or in part of the public property of Astoria, one of the many municipalities existing within the state? Article IX, Section 4 of the state Constitution provides that "no

money shall be drawn from the treasury but in pursuance of appropriations made by law.'' If money is attempted to be appropriated by an invalid statute it is not an appropriation by law; for the invalid statute is not law. If, however, a statute appropriating money is valid, it is law and therefore is an appropriation made by law: *State ex rel. New Richmond* v. *Davidson,* 114 Wis. 563, 573 (88 N. W. 596, 90 N. W. 1067, 58 L. R. A. 739).

3–5. It must be constantly borne in mind, when inquiring into the extent of the power of the state legislature, that the national Constitution is an instrument granting power while the state Constitution is an instrument limiting power. Exercisable sovereign power is by our Constitutions, national and state, divided among three departments of government which although separate each from the other are nevertheless checked each by the other. In addition to being checked by each other, the legislative and executive departments are each also checked by the judicial department. No one department can itself make the law and then execute it and finally pass upon its validity. While, as said in *Loan Assn.* v. *Topeka,* 20 Wall. (U. S.) 655, 663 (22 L. Ed. 455, see, also, Rose's U. S. Notes), ''the theory of our governments, state and national, is opposed to the deposit of unlimited power anywhere,'' and the three departments ''are all of limited and defined powers,'' the state legislature may nevertheless exercise the whole sum of legislative power except as that power is restrained and limited by the national and state Constitutions. If, therefore, in any given case the power exercised by the legislative department is in truth legislative in character, the judicial . department can enforce only such limitations as the national and state Constitutions impose: Cooley's

Constitutional Limitations (7 ed.), 126; *Crawford* v.
*Linn County,* 11 Or. 482 (5 Pac. 738); *State* v. *Coch-
ran,* 55 Or. 157, 200 (104 Pac. 419, 105 Pac. 884);
*Daggett* v. *Colgan,* 92 Cal. 53 (28 Pac. 51, 27 Am. St.
Rep. 95, 14 L. R. A. 474); *State ex rel. New Rich-
mond* v. *Davidson,* 114 Wis. 563 (88 N. W. 596, 90
N. W. 1067, 58 L. R. A. 739); *Jacksonville* v. *Bowden,*
67 Fla. 181 (64 South. 769, Ann. Cas. 1915D, 99,
L. R. A. 1916D, 913); *State ex rel. Linde* v. *Taylor,*
33 N. D. 76 (156 N. W. 561, Ann. Cas. 1918A, 383,
L. R. A. 1918B, 156).

All questions of public policy are, except as con-
trolled by constitutional limitations, for the legis-
lature. The courts cannot inquire into the wisdom
of legislation. If a statute successfully passes the
tests prescribed by national and state Constitutions,
it is valid and is a law regardless of whether a few
or many or all deem it a good or an unwise law.
The only inquiry which the judicial department may
lawfully make is whether the statute is valid or in-
valid: *McMahan* v. *Olcott,* 65 Or. 537, 541, 549 (133
Pac. 836); *State ex rel. Linde* v. *Taylor,* 33 N. D. 76
(156 N. W. 561, Ann. Cas. 1918A, 583, L. R. A. 1918B,
156); *Lowell* v. *Oliver,* 8 Allen (Mass.), 247.

Not only the body of Chapter 280 but the preamble
involves findings by the legislature that certain facts
existed. If the right of the legislature to enact
Chapter 280 depended upon the existence of the facts
recited in the preamble or involved in the body of
the act, then it must be said that on the record as it
comes to us the decision of the legislature that the
facts existed is absolutely conclusive: *Miller* v.
*Henry,* 62 Or. 4, 10 (124 Pac. 199, 41 L. R. A. (N. S.)
97); *Stevenson* v. *Colgan,* 91 Cal. 649 (27 Pac. 1089,
25 Am. St. Rep. 230, 14 L. R. A. 459); *Woodall* v.

*Darst,* 71 W. Va. 350 (77 S. E. 264, 80 S. E. 367, Ann. Cas. 1914B, 1278, 44 L. R. A. (N. S.) 83).

6, 7. Taxes cannot be appropriated for private purposes: *Stevenson* v. *Port of Portland,* 82 Or. 576, 582 (162 Pac. 509); *In re Relief Bills,* 21 Colo. 62 (39 Pac. 1089). "It is implied," says Judge COOLEY, "in all definitions of taxation that taxes can be levied for public purposes only." Cooley on Taxation, (2 ed.), 103. Both the national and state Constitutions either expressly or impliedly confine the exercise of the power of taxation to public purposes: *Woodall* v. *Darst,* 71 W. Va. 350 (77 S. E. 264, 80 S. E. 367, Ann. Cas. 1914B, 1278, 44 L. R. A. (N. S.) 83); *Veterans' Welfare Board* v. *Jordan,* 189 Cal. 124 (208 Pac. 284, 22 A. L. R. 1515); Judson on Taxation (2 ed.), 392. The question as to whether or not a tax is for a public or a private purpose is in the first instance for the legislature; but, although the judicial department has no right to inquire into the wisdom of legislation, the determination of the legislative department that a given statute is for a public purpose is not conclusive, and therefore the courts may inquire into the question as to whether an appropriation is for a private or for a public purpose: *State ex rel. New Richmond* v. *Davidson,* 114 Wis. 563 (88 N. W. 596, 90 N. W. 1067, 58 L. R. A. 739); *Woodall* v. *Darst,* 71 W. Va. 350 (77 S. E. 264, 80 S. E. 367, Ann. Cas. 1914B, 1278, 44 L. R. A. (N. S.) 83); Cooley on Taxation (2 ed.), 103.

8, 9. The judicial department must, when passing upon the nature of the purpose of a statute, base its decision upon the matters appearing upon the face of the statute, and possibly facts of which judicial notice may be taken may also be considered; but ordinarily a court cannot make an independent in-

quiry as to facts which do not appear in the statute and are discoverable only outside of the provisions of the statute, and then, based upon such extraneous facts, say that the statute is unconstitutional: *Waterloo Woolen Mfg. Co.* v. *Shanahan,* 128 N. Y. 345 (28 N. E. 358, 14 L. R. A. 481). It is not always easy to determine whether a given tax or appropriation is for a private or for a public purpose. It is difficult and perhaps impossible to frame a definition which will readily and with unfailing certainty include every case which ought properly to be included and exclude all others: Cooley on Taxation (2 ed.), 113; 1 Dillon's Municipal Corporations (4 ed.), 573; *Stevenson* v. *Port of Portland,* 82 Or. 576, 582 (162 Pac. 509). Whether a tax is for a private or public purpose must be determined by the essential character of its direct object (25 R. C. L. 399); and the national Supreme Court has ruled that in deciding this question the courts "must be governed mainly by the course and usage of the government, the objects for which taxes have been customarily and by long course of legislation levied, what objects or purposes have been considered necessary to the support and for the proper use of the government, whether state or municipal. Whatever lawfully pertains to this and is sanctioned by time and the acquiescence of the people may well be held to belong to the public use, and proper for the maintenance of good government, though this may not be the only criterion of rightful taxation": *Loan Assn.* v. *Topeka,* 20 Wall. (U. S.) 655, 665 (22 L. Ed. 455, see, also, Rose's U. S. Notes). See, also: *People* v. *Salem,* 20 Mich. 452 (4 Am. Rep. 400), and Cooley on Taxation (2 ed.), 112. But while recognizing the influence of customs and usages already established it must not be for-

gotten that new customs may be formed and that
conditions may change with the progress of time so
that a purpose which only a short time ago was by
all considered to be private may to-day by reason of
change of conditions be considered by all to be public:
*Stevenson* v. *Port of Portland,* 82 Or. 576 (162 Pac.
509); *State ex rel. Reclamation Board* v. *Clausen,*
110 Wash. 525 (188 Pac. 538, 14 A. L. R. 1133).

The essential character of the direct object of the
appropriation made by Chapter 280 is not to relieve
or aid one or more persons as mere individuals.
The purpose is not to assist the individuals who
happen to be residents of Astoria; but the direct
object is to aid a community as distinguished from
individuals composing a community. Without ex-
ception the cases relied upon to support the contention
that Chapter 280 appropriates state taxes for private
purposes are cases where the direct object and ulti-
mate purpose of the legislature was to aid in-
dividuals; as, for examples, *Patty* v. *Colgan,* 97 Cal.
251 (31 Pac. 1133, 18 L. R. A. 744), an appropriation
for the benefit of flood sufferers; *In re Relief Bills,*
21 Colo. 62 (39 Pac. 1089), an appropriation to buy
seed for farmers: *State ex rel. Griffith* v. *Osawkee
Township,* 14 Kan. 418 (19 Am. Rep. 99), providing
seed grain for farmers; and *Lowell* v. *Boston,* 111
Mass. 455 (15 Am. Rep. 39), providing for the issu-
ance of bonds, the proceeds of which were to be
loaned to individuals for rebuilding and replacing
property destroyed by the Boston fire. It is true
that in each of the foregoing instances where the
purpose was held to be private the distress was
caused by a flood, or a drought, or a fire; but it is
also true that in each instance the purpose sought
to be accomplished was private in character because

the direct object was to relieve the individual as distinguished from the community. The direct object of Chapter 280 is to aid the city in replacing public property and not to aid individuals, although the inhabitants of Astoria will of course derive benefits from the replacement of public property.

10. Astoria is a municipal corporation; and it is therefore a public as distinguished from a private corporation. Pure municipal corporations, such as cities, are merely instrumentalities of the state established for the convenient administration of local government; they are state governmental agencies; they are auxiliaries of the state for the purpose of local self-government; they are mere political subdivisions of the state created by authority of the state for the purpose of exercising a part of its powers: *Mount Pleasant* v. *Beckwith,* 100 U. S. 514 (25 L. Ed. 699, see, also, Rose's U. S. Notes); *Cook* v. *Port of Portland,* 20 Or. 580, 588 (27 Pac. 263, 13 L. R. A. 533); *Meriwether* v. *Garrett,* 102 U. S. 472 (26 L. Ed. 197); *Atkin* v. *Kansas,* 191 U. S. 207 (48 L. Ed. 148, 24 Sup. Ct. Rep. 124, see, also, Rose's U. S. Notes); *Wood* v. *Detroit,* 188 Mich. 547 (155 N. W. 592, L. R. A. 1916C, 388). The moneys appropriated by Chapter 280 go, therefore, to a governmental, a public agent of the state and not to a private individual or agency.

It is true that under the present form of our state Constitution cities and towns may adopt their own charters and the legislative assembly cannot by a special law enact, amend or repeal the charter of a particular town, but it is also true that the legislature may enact a general law affecting cities and towns and the electors of the state may in the exercise of the initiative by either general or special laws enact,

amend or repeal municipal charters. However, conferring the power of the initiative upon cities and towns and prohibiting the legislative assembly from enacting special laws and reserving to the electors of the state the right to enact either special or general laws did not divorce cities and towns from control by the state nor change their character as governmental agencies of the state: *Straw* v. *Harris*, 54 Or. 424, 436 (103 Pac. 777); *State ex rel.* v. *Port of Tillamook,* 62 Or. 332, 341 (124 Pac. 637, Ann. Cas. 1914C, 483).

11. Much of the plaintiff's printed brief is devoted to the suggestion that municipal property is the private property of the residents of the municipality and not public property. This suggestion goes on the theory that the municipality is a trustee holding the legal title for the benefit of the inhabitants of the municipality. If all the municipal property of a city is the private property of the inhabitants of the city, then there is no such thing as public property; for if a city is a trustee holding the legal title of municipal property for the inhabitants of the city and such property is the private property of those persons, then by the same token the state as trustee holds the legal title of state property for the citizens of the state and such property is the private property of those persons. A mere statement of the suggestion pronounces its own confutation. Property acquired by a municipality whether it be moneys raised by taxation or buildings or improvements acquired by the expenditure of taxes is not and cannot be the private property of the municipality in the sense in which the property of an individual or private corporation is deemed to be private property: *Yamhill County* v. *Foster,* 53 Or. 124, 131 (99 Pac.

108 Or.—34

286). No inhabitant of a city has such an interest in any municipal property that he can sell or mortgage or bequeath or devise or donate it. The inhabitants of a city are the particular public which constitute the municipality and at the same time they are a portion of the general public which constitute the state. The city may, it has been said, own property in which none but the inhabitants of the city have an interest and it may own property in which the people of the entire state have an interest; but in either instance the property is public property.

A city may control property used in a purely governmental activity or it may own property used in what has been termed a ''private municipal activity,'' but in either event the property is public property. All municipal property may within certain constitutional limitations be controlled by the state; and the right of control is lesser or greater usually depending upon whether the property is or is not used by the city in the performance of a strictly governmental duty devolved upon the city as an agency of the state; but whether protected by greater or by lesser constitutional limitations, property of both classes is nevertheless to be deemed public, if that term is employed in its broadest and not in its restricted sense: *Portland & W. V. R. R. Co.* v. *City of Portland,* 14 Or. 188 (12 Pac. 265, 58 Am. Rep. 299); *David* v. *Portland Water Committee,* 14 Or. 98 (12 Pac. 174); *Simon* v. *Northup,* 27 Or. 487, 501 (40 Pac. 560, 30 L. R. A. 171); *Brand* v. *Multnomah County,* 38 Or. 79, 91 (60 Pac. 390, 62 Pac. 209, 84 Am. St. Rep. 772, 50 L. R. A. 389); *Yamhill County* v. *Foster,* 53 Or. 124, 131 (99 Pac. 286); *Miller* v. *Henry,* 62 Or. 4, 7 (124 Pac. 199, 41 L. R. A. (N. S.) 97); *Platt* v. *Newberg,* 104 Or. 148, 157 (205 Pac. 296); *Meriwether* v.

*Garrett,* 102 U. S. 472 (26 L. Ed. 197, see, also, Rose's U. S. Notes); *State ex rel. Linde* v. *Taylor,* 33 N. D. 76 (156 N. W. 561, Ann. Cas. 1918A, 583, L. R. A. 1918B, 156); *Coyle* v. *McIntyre,* 7 Houst. (Del.) 44 (30 Atl. 728, 40 Am. St. Rep. 109); *Mount Hope Cemetery* v. *Boston,* 158 Mass. 509 (33 N. E. 695, 35 Am. St. Rep. 515); *Wood* v. *Detroit,* 188 Mich. 547 (155 N. W. 592, L. R. A. 1916C, 388).

We are not now called upon to decide whether the words "public property" as used in Chapter 280 were intended to be employed or can be applied in the broadest sense so as to include property used in the exercise of powers classified as private in character as well as property used in the exercise of powers classified as governmental in character. The only question we are now to decide is whether the statute is constitutional. The record does not advise us whether Astoria was engaged in any "private municipal activity"; but we do know that it had made improvements which were used in the performance of purely governmental duties. It is sufficient to say that the statute in any event includes and can be applied to property used by the city in performing duties devolved upon it as a governmental agency of the state; and as to such property it clearly appears that the appropriation is for a public purpose, for the statute appropriated public money to be used by a public agency of the state in replacing public property used for the public.

12. From the conclusion that the appropriation is for a public purpose it does not necessarily follow that the appropriation is legal. The public purpose for which the appropriation is made must pertain to the tax levying district: *Wasson* v. *Commissioners of Wayne County,* 49 Ohio St. 622 (32 N. E. 472, 17 L. R. A.

795). State taxes must be used to accomplish a state purpose; county taxes must be employed to effect a county purpose; and city taxes must be used for a municipal purpose: *People* v. *Salem,* 20 Mich. 452 (4 Am. Rep. 400); Cooley on Taxation (2 ed.), 141; *Stevenson* v. *Port of Portland,* 82 Or. 576, 582 (162 Pac. 509). Notwithstanding the control exercisable by the state over the city, the legislature cannot by statute divert city taxes to a county purpose; nor can city or county taxes be diverted to a state purpose: *Simon* v. *Northup,* 27 Or. 487 (40 Pac. 560, 30 L. R. A. 171); *Yamhill County* v. *Foster,* 53 Or. 124, 131 (99 Pac. 286). In the instant case state taxes are to be turned over to Astoria to aid in replacing municipal property. Is this a violation of the rule that the purpose must pertain to the sovereignty which levies and appropriates the taxes used to accomplish such purpose?

It is not necessary to decide, and hence we do not now attempt to decide, whether the legislature can appropriate state taxes and deliver them to a city to be used in making municipal improvements when that city financially and otherwise is in a normal condition and not suffering from the effects of a calamity such as the one that wrought so much destruction in Astoria. It seems to be generally conceded that state taxes cannot be appropriated for a purpose which is purely local to a city; and therefore unless it can be said that the appropriation is to subserve the common interest and well-being of the people of the state it is not lawful. However, the matters which by all persons will be conceded to be purely local are few; matters in which may be reasonably seen a state interest are many; and, consequently, so far as any constitutional limitations requiring equal-

ity and uniformity are concerned, it is possible that for most if not for all practical purposes the only fetter upon legislative action is the legislative conscience: *State ex rel. New Richmond* v. *Davidson,* 114 Wis. 563 (88 N. W. 596, 90 N. W. 1067, 58 L. R. A. 739); Judson on Taxation (2 ed.), 414; Gray on Limitations of Taxing Power, 242; 26 R. C. L. 75.

13. Astoria was not in a normal condition when Chapter 280 was enacted. Property worth more than $11,000,000, including public property valued at $1,500,000, had been destroyed. The legislature found the facts to be that the fire left the city and its people financially prostrate with property assessed at $8,000,000 and weighted with a municipal debt of more than $5,500,000; and that it was impossible, because of the already large bonded indebtedness, for the city to raise money by placing additional liens upon its property. This presented a situation where the legislature could with especial propriety say, just as it did say, that the people of the state at large have an interest in replacing the public property of Astoria so that the city can at the earliest possible moment resume its former normal condition and completely and effectively perform its duties as one of the governmental agencies of the state. The legislature, finding as it did that the welfare of the people of the entire state would be subserved, was authorized in behalf of the state to make provision for part of the funds necessary for replacing public property and to leave to the city the responsibility of raising the balance of the necessary funds: *Cook* v. *Port of Portland,* 20 Or. 580, 588 (27 Pac. 263, 13 L. R. A. 533); *Stoppenback* v. *Multnomah County,* 71 Or. 493, 508 (142 Pac. 832); *Nicholas* v. *Yamhill County,* 102 Or. 615, 626 (192 Pac. 410, 203 Pac. 593); *Kingman et al., Petitioners,* 153 Mass. 566 (27 N. E. 778, 12

L. R. A. 417); 26 R. C. L. 74; Gray on Limitations of Taxing Power, 236.

14, 15. Chapter 280 does not contravene Article I, Section 20, relating to exclusive privileges; nor does it contravene Section 32 of the same Article requiring that all taxation shall be uniform on the same class of subjects within the territorial limits of the authority levying the taxes: *Miller* v. *Henry,* 62 Or. 4, 7, 9 (124 Pac. 199, 41 L. R. A. (N. S.) 97); *Rankin* v. *Yoran,* 72 Or. 224, 230 (143 Pac. 894); *Stoppenback* v. *Multnomah County,* 71 Or. 493, 508 (142 Pac. 832).

16. Manifestly the statute does not come within Article IV, Section 23, subdivision 10, prohibiting local and special laws for the assessment and collection of taxes: *Simon* v. *Northup,* 27 Or. 487, 500 (40 Pac. 560, 30 L. R. A. 171); *McMahon* v. *Olcott,* 65 Or. 537, 542 (133 Pac. 836).

17, 18. We do not think that the statute violates Article XI, Section 7, prohibiting the legislature from lending the credit of the state. See *City of Arkansas* v. *Keeling* (Tex.), 247 S. W. 818, where the Supreme Court of Texas considered a statute which embraced substantially the same plan as Chapter 280. Nor does the act contravene Section 8 of Article XI of the state Constitution prohibiting the state from assuming the debts of any county, town or other corporation, as that section is construed in *Stoppenback* v. *Multnomah County,* 71 Or. 493, 502 (142 Pac. 832). See, also, *Grout* v. *Kendall,* 195 Iowa, 467, 192 N. W. 529. No bonds had yet been issued and no debt incurred for replacing public property when Chapter 280 was enacted; and, moreover, we are informed that no such bonds have even yet been issued. The debt incurred is to be incurred in the future and when it is incurred it will be with the consent of the legislative assembly. We do not now decide whether

Chapter 280 does in truth operate as a *pro tanto* assumption of a future debt, but if it be assumed for the purposes of the present discussion that the statute operates as a *pro tanto* assumption of a debt of the city it is not such a debt as is forbidden by Article XI, Section 8, of the state Constitution. In the final analysis the state is appropriating money to pay for a state interest.

The decree of the Circuit Court is affirmed.

AFFIRMED.