Argued and submitted May 2, judgments of the circuit court reversed and cases remanded to the circuit court for further proceedings August 29, both petitions for reconsideration denied November 26, 1996

Myron W. STOVALL,
Dwayne Osburn, Theodore W. Kuenzi,
Robert L. Maxey and Jeannette L. Bremer,
on behalf of themselves and of a plaintiff
class consisting of all persons or
entities who received retirement, death,
disability benefits or other payments
through the Public Employes Retirement
System on or after January 1, 1991,
because of work performed by public
employees before September 29, 1991,
and whose PERS payments have been
subjected to Oregon personal income taxation,
*Appellants,*

*and*

John B. LEAHY,
*Plaintiff,*

*v.*

STATE OF OREGON,
by and through
Oregon Department of Transportation,
Public Employee Retirement Board and
Department of Administrative Services,
*Appellants,*

*and*

PORTLAND SCHOOL DISTRICT NO. 1J,
Marion County, City of Salem and
Multnomah County, on behalf of themselves
and of a defendant class consisting
of all state and local public
employers who employed persons who,
by reason of such employment,
received, on or after January 1, 1991,
PERS payments because of services
performed before September 29, 1991,
League of Oregon Cities,

Special Districts Association of Oregon
and Oregon School Districts Association,
*Respondents,*

*and*

CITY OF EUGENE
and Eugene Water and Electric Board,
on behalf of themselves and of a
defendant class consisting of all state
and local public employers who employed
persons who, by reason of such
employment, received, on or after
January 1, 1991, PERS payments because
of services performed before September 29, 1991,
*Intervenors-Respondents.*

(CC93C11180)

Rose CHESS,
Velma K. Mullaley, Edith S. Orner,
Ben Sickinger, Robert McCoy, Ed Lape,
Jacob Weinstein, Richard Fraser,
Grace Shaw, Lyddie Bell Sedivy,
for themselves and on behalf of a class
of retirees from public employment,
Oregon Public Employees Union,
Oregon Education Association,
Oregon Association of Classified
Employees,American Federation of State,
County and Municipal Employees
and Portland Fire Fighters Association,
*Appellants,*

*v.*

STATE OF OREGON,
Oregon Public Employes' Retirement Board,
State Department of Higher Education,
State Department of Health and Human Resources,
State Department of Transportation
and Executive Department,
*Appellants,*

*and*

DEPARTMENT OF ADMINISTRATIVE SERVICES
and Department of Treasury,
*Defendants,*
*and*

CITY OF PORTLAND,
North Clackamas School District 12,
Corvallis School District 509J,
Multnomah County, Yamhill County,
League of Oregon Cities,
Special Districts Association of Oregon,
Oregon School Districts Association
and Josephine County,
for themselves and on behalf of a class of
local government public employers in Oregon,
Oregon State Bar
and Professional Liability Fund,
*Respondents,*
*and*

CITY OF EUGENE
and Eugene Water and Electric Board,
for themselves and on behalf of a class of
local government public employers in Oregon,
*Intervenors-Respondents.*

(CC 94C10334; SC S43012)

922 P2d 646

John R. Faust, Jr., of Schwabe, Williamson & Wyatt, Portland, argued the cause and filed the briefs for appellants Stovall et al.

James S. Coon, of Swanson, Thomas & Coon, Portland, and Gregory A. Hartman, of Bennett Hartman Reynolds & Wiser, Portland, argued the cause and filed the briefs for appellants Chess et al.

Elizabeth S. Harchenko, Special Counsel to the Attorney General, Salem, argued the cause for appellants State of Oregon et al. With her on the briefs were Theodore R. Kulongoski, Attorney General, Virginia L. Linder, Solicitor General, and Michael D. Reynolds, Assistant Solicitor General.

John W. Osburn, of Miller, Nash, Wiener, Hager & Carlsen, Portland, argued the cause and filed the brief for respondents Portland School District No. 1J, Oregon School Districts Association, North Clackamas School District 12, and Corvallis School District 509J.

Robert C. Cannon, Salem, argued the cause and filed the brief for respondents Marion County and Yamhill County.

Jacob Tanzer, Portland, argued the cause and filed the brief for respondents League of Oregon Cities and Special Districts Association of Oregon.

William F. Gary, of Harrang Long Gary Rudnick, P.C., Eugene, argued the cause for respondents City of Eugene and Eugene Water and Electric Board. With him on the brief was Judith Giers.

Gerald H. Itkin, Assistant County Counsel, Portland, on behalf of respondent Multnomah County, joined in the briefs of respondents League of Oregon Cities and Special Districts Association of Oregon; Portland School District No. 1J, Oregon School Districts Association, North Clackamas School District 12, and Corvallis School District 509J; Marion County and Yamhill County; and City of Eugene and Eugene Water and Electric Board.

Sylvia E. Stevens, Assistant General Counsel, waived appearance for respondent Oregon State Bar and Professional Liability Fund.

No appearance for respondents City of Salem, City of Portland, and Josephine County.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Fadeley, Graber, and Durham, Justices.**

GRABER, J.

---

** Unis, J., retired June 30, 1996, and did not participate in this decision.

## GRABER, J.

In *Hughes v. State of Oregon*, 314 Or 1, 36, 838 P2d 1018 (1992), this court held, in part, that it was a breach of contract for the State of Oregon to subject to state income taxes employee pension benefits paid under the Public Employes' Retirement System (PERS), ORS 237.001 to 237.315 (1993), accrued or accruing for work performed before September 29, 1991. Plaintiffs in these two consolidated cases seek damages for that breach. The trial court ruled that the state was liable for those damages and that the damages should be paid out of the state's General Fund. The trial court enjoined the state from seeking contribution from other PERS employers and enjoined the implementation of legislative enactments intended to compensate plaintiffs for the damages suffered. We now reverse the judgment of the trial court.

## I. FACTS AND PROCEDURAL BACKGROUND

In 1945, the legislature enacted the Public Employes' Retirement Act (PERA). OCLA §§ 90-701 to 90-723 (Supp 1947) (Or Laws 1945, ch 401). Benefits paid under that statutory system were exempt from all state taxes. OCLA § 90-723 (Supp 1947) (Or Laws 1945, ch 401, § 23). Although the legislature modified the laws concerning public employee benefits often over the following 45 years, that tax exemption remained a part of the statutes until 1991. *See Hughes*, 314 Or at 7-8 (discussing the evolution of PERS exemption).

In 1989, the United States Supreme Court decided *Davis v. Michigan Dept. of Treasury*, 489 US 803, 109 S Ct 1500, 103 L Ed 2d 891 (1989). In *Davis*, the Court held that a state violates federal statutory and constitutional principles of intergovernmental tax immunity if it exempts pension benefits paid by the state government from state income taxes, but does not exempt pension benefits paid by the federal government. 489 US at 817. The Court held that states must tax such benefits alike or exempt them alike. *Id.* at 817-18.

At the time that the Supreme Court issued its decision in *Davis*, Oregon taxed federal pension benefits as personal income, but exempted PERS retirement benefits from state taxation. *Former* ORS 237.201 (1989); *former* ORS 316.680(1)(d) (1989). In 1991, to comply with *Davis*, the legislature decided to subject PERS benefits to taxation, rather than to exempt federal benefits from taxation. Accordingly, the legislature passed Oregon Laws 1991, chapter 823. *See Hughes*, 314 Or at 9 (discussing the history leading to enactment of Oregon Laws 1991, chapter 823). Sections 1 and 3 eliminated that tax exemption for personal income benefits. *See* Or Laws 1991, ch 823, §§ 1, 3 (eliminating the income tax exemption for PERS pension benefits).

A group of then-present and retired public employees challenged the 1991 law. In *Hughes*, this court held that Oregon Laws 1991, chapter 823, section 1, violated Article I, section 21, of the Oregon Constitution,[1] and that section 3 "breache[d] petitioners' PERS contract insofar as it subjects to state * * * taxation PERS retirement benefits accrued or accruing for work performed before the effective date of that 1991 legislation." 314 Or at 36. The court declined to fashion a remedy for that breach of contract, however, choosing instead to defer to the legislature, "the most appropriate branch of government in the first instance to choose among the available remedies." *Id.* at 33 n 36.[2]

In February 1993, plaintiff Stovall, a former employee of the Department of Transportation, filed a complaint in Multnomah County Circuit Court against the state.[3] The complaint was amended to include other plaintiffs who were employees of various political subdivisions of the state.

---

[1] Article I, section 21, of the Oregon Constitution, provides in part:

"No * * * law impairing the obligation of contracts shall ever be passed * * *."

[2] In *Oregon State Police Officers' Assn. v. State of Oregon*, 323 Or 356, 370, 918 P2d 765 (1996), a majority of the members of this court questioned the reasoning underlying the court's decision in *Hughes*. Nonetheless, the court reaffirmed its holding in *Hughes* concerning the damages to which plaintiffs are entitled. *See ibid.* ("Although this court's interpretation of the tax exemption statute in *Hughes* is open to criticism, it is the law of that case.").

[3] By stipulation of the parties, the case later was transferred to the Marion County Circuit Court.

Those plaintiffs seek a declaration that, pursuant to this court's decision in *Hughes*, each PERS participating employer is liable to its respective employees and their beneficiaries for the damages that resulted from the state's taxation of retirement benefits.

In January 1994, plaintiffs in the *Chess* case filed a class action in Marion County Circuit Court against a defendant class of PERS employers, alleging breach of a contract to provide PERS benefits free of state income tax. The requested plaintiff class consisted of "all retirees from state, local and school district service whose retirement, death, and disability benefits have been subjected to Oregon state and/or local income taxation." The requested defendant class consisted of the State of Oregon and numerous political subdivisions of the state.[4]

The trial court consolidated the *Stovall* and *Chess* cases and certified a class of plaintiffs consisting of "all persons or entities who received retirement, death, disability benefits or other payments through the Public Employee Retirement System on or after January 1, 1991, because of work performed by public employees before September 29, 1991 and whose PERS payments have been subjected to Oregon personal income taxation."[5] The court certified a class of defendants consisting of "all state and local public employers who employed persons who, by reason of such employment, received, on or after January 1, 1991, PERS payments because of services performed before September 29, 1991."

In July 1994, the Stovall plaintiffs filed a fourth amended complaint, alleging a breach of contract by each

---

[4] As this litigation progressed, defendants, the State of Oregon and political subdivisions of the state, filed claims against each other. For the sake of clarity, throughout the remainder of this opinion, references to "local defendants" are shorthand for the various political subdivisions of the state that are before the court in this proceeding; it does not include the State of Oregon. We refer to the State of Oregon as "the state."

[5] Plaintiff class in this case is different from and smaller than the plaintiff class in *Hughes*. In *Hughes*, the plaintiff class consisted of "*present and retired* public employees (or their representatives)." 314 Or at 5 n 3 (emphasis added). In this case, plaintiff class includes only retired public employees (or their representatives) and thus is a subset of the *Hughes* class.

PERS participating employer and seeking damages "sufficient to provide [members of the plaintiff class] the equivalent of untaxed retirement benefits, plus interest thereon, for all * * * benefits that were promised to be exempt from state and local taxation." Plaintiffs also sought injunctive relief against any further breach by defendants.

Over the next few weeks, the state and local defendants filed their answers, cross-claims, and affirmative defenses.[6]

The state admitted its liability to its former employees and denied all other requests for relief. The state sought a declaration that there was no contract between it and those retirees who had been employed by defendant class members *other than* the state. The state cross-claimed against local defendants for a declaration that local defendants must contribute to PERS the cost of any increase in benefits determined to be due to members of the plaintiff class on account of the breach of the contract for tax-free PERS benefits.

Local defendants denied any contract or other liability to members of the plaintiff class. They asserted numerous cross-claims against the state, alleging a statutory contract between them. Although their claims varied in many respects, all local defendants alleged that the statutory contract that they had with the state contained the following terms: the state agreed to pay, through PERS, retirement benefits to qualifying retirees in amounts set forth in ORS chapter 238;[7] the state agreed to compute those benefits without reference to state income tax liability; and the state agreed that PERS benefits would be exempt from state income taxation. Local defendants asserted that repeal of the tax exemption in 1991 constituted a breach and impairment

---

[6] Plaintiffs in *Chess* filed a third amended complaint on November 1, 1994. They pleaded, as now pertinent, theories that are indistinguishable from the pertinent theories pleaded by the *Stovall* plaintiffs.

Defendants filed answers, cross-claims, and affirmative defenses to the third amended *Chess* complaint. Defendants made the same allegations there that they had made in response to the fourth amended complaint in *Stovall*.

[7] Before 1995, the PERS provisions now contained in ORS chapter 238 were codified in ORS chapter 237. For the sake of convenience, we refer throughout this opinion to ORS chapter 238, except where reference to a prior version of the PERS statutes is necessary.

of the state's statutory contracts with them. Local defendants sought a declaration that they could be required to fund PERS benefits only "based upon the statutory computation factors which existed at the time each * * * class member commenced participation in PERS."

Local defendants argued that Oregon Laws 1991, chapter 796 (SB 656), which provided for increased PERS benefits in lieu of the tax exemption, was an unconstitutional impairment of their statutory contract with the state. Local defendants also claimed that plaintiffs were third-party beneficiaries of a contract, between the political subdivisions of the state and the state, for tax-free PERS benefits. Accordingly, local defendants argued, the state is liable to them for any loss caused by the state's breach of that promise.[8] Local defendants sought a declaration of breach or impairment of contract, an injunction against any requirement to fund a remedy for loss of the tax exemption, and restitution of any sums paid pursuant to such a requirement.

Local defendants also filed cross-claims against the state for breach of fiduciary duty, breach of a duty of good faith and fair dealing, contribution, indemnity, unjust enrichment, and unconstitutionally taxing cities or special districts to indemnify state taxpayers.

Multnomah County repeated the answer, affirmative defenses, and cross-claims asserted by the other local defendants and also cross-claimed that, under a written contract entered into between the state and Multnomah County, the state was required to defend and indemnify Multnomah County for any claims concerning retirement benefits. Portland School District 1J similarly asserted that, under a written contract that it had with the state, the state is liable for

---

[8] Defendants City of Eugene and Eugene Water and Electric Board (Eugene) and some other local defendants also asserted, as an affirmative defense, that they were third-party beneficiaries of a contract between plaintiffs and the state. However, before this court, Eugene argues instead that plaintiffs are third-party beneficiaries of a contract between Eugene and the state. To the extent that those local defendants intend to assert the former argument, not presented in this court, our discussion below, 324 Or at 120-25, concerning the contractual nature of the relationship between plaintiffs and local defendants, disposes of that claim. To the extent those local defendants intend to assert that plaintiffs are third-party beneficiaries, our discussion below, 324 Or at 120, disposes of the argument.

any damages incurred by plaintiffs for work performed or benefits earned.

After the pleadings were filed, local defendants filed motions for summary judgment on their cross-claims, ORCP 47 A. Plaintiffs filed cross-motions for summary judgment on the cross-claims, ORCP 47 B. Plaintiffs also filed motions for judgment on the pleadings, ORCP 21 B, and motions for summary judgment as to their underlying claims.

In March 1995, the trial court issued a letter opinion saying that, under *Hughes*, the state may not tax benefits already accrued and accruing before the effective date of the 1991 elimination of the income tax exemption. The trial court concluded that the state has a statutory contract with state and local government *employees* who participated in PERS and that the state breached that contract by subjecting PERS benefits to state income tax. The court also concluded that the state has a statutory contract with PERS *employers* to provide benefits to PERS employees and that the PERS employers agreed to fund PERS in an amount based "on a number of computation factors, none of which includes funding allowances for tax liability." The trial court stated that the state modified the contract when it taxed PERS benefits and attempted to require local governments to pay for the state's breach.

The trial court further concluded that plaintiffs are third-party beneficiaries of a contract between the state and the local defendants and that plaintiffs have a right to enforce that contract against the state. The court also stated that, "[i]f there is a promise and a breach by the local defendant employers, they are entitled to indemnification from the state" and that, "[i]n equitable terms, the local defendant employers are entitled to restitution for the unjust enrichment of the state for the state's breach."

As a remedy, the trial court enjoined the state from taxing plaintiffs' PERS benefits. The court stated that, "[i]f that is not possible, the state, through general fund dollars[,] must make the [plaintiff class] whole." The trial court enjoined the state from seeking funds from local defendants and from using PERS funds to remedy the breach.

In June 1995, the legislature passed House Bill 3349. Or Laws 1995, ch 569. The governor signed HB 3349 on July 14, 1995, and it became effective on that date. Or Laws 1995, ch 569, § 14. That act provided for increased compensation to PERS members as to whom the state had breached its contract to provide tax-free pension benefits. Section 2 of HB 3349 provided in part:

> "The increased benefits provided by * * * this 1995 Act[ ] are paid to members of the Public Employes' Retirement System and their beneficiaries in compensation for damages suffered by those members and beneficiaries by reason of subjecting benefits paid * * * to Oregon personal income taxation. The increased benefits provided by this 1995 Act are intended to provide full, complete and final payment of any claim of a member of the system, or a beneficiary of a member, arising out of the taxation of those benefits."

HB 3349 provided that the increased benefits (or damages) be paid out of the Public Employes' Retirement Fund (PERF). HB 3349, §§ 3, 10. HB 3349 required that individual PERS employers help fund the increased benefits provided to the retirees. Or Laws 1995, ch 569, §§ 3(6), 5(8).

Thereafter, the state filed a supplemental answer, affirmative defense, and cross-claim. The state repeated its previous claims. In addition, the state sought a declaration that HB 3349 is valid and that the remaining defendants are obligated to contribute to the cost of the benefits payable under HB 3349.

Plaintiffs filed supplemental replies. They repeated their previous claims. They also sought a declaration as to the validity of HB 3349 and a declaration from the court as to who ultimately owes them contract damages.

Local defendants filed supplemental answers and cross-claims. They repeated their previous claims. They also asserted that the state had contracted with them to: (1) provide tax-free retirement benefits to their employees, and HB 3349 breaches or impairs that contract; (2) use PERF to pay only benefits, not damages, and HB 3349 breaches or impairs that contract; (3) assess against them only the costs for the benefits provided to plaintiffs under state law at the time

they joined PERS, and HB 3349 breaches or impairs that contract. Local defendants also argued that HB 3349 breaches a fiduciary duty that the state owes to them and that HB 3349 is an unconstitutional tax. Finally, local defendants argued that the state would be enriched unjustly if local defendants were required to contribute toward the increased benefits provided in HB 3349 and if the state were permitted to use PERF monies to pay for those benefits. Local defendants asked for a declaration that HB 3349 is invalid and for an injunction against its implementation.

The parties then filed cross-motions for summary judgment. In November 1995, the trial court issued a second letter opinion. In that opinion, the trial court repeated its findings of fact and conclusions of law from the prior letter opinion. The court then stated:

"It is clearly stated in HB 3349 that the intent of the statute (regardless of the form the payments take) is to pay *damages* for wrongful taxation of PERS benefits. This court has previously held and affirms that the local defendants do not owe any *damages* to the plaintiffs; the local defendants did not breach a contract nor did they engage in any wrongdoing to the detriment of the plaintiffs. Thus HB 3349 is defective in its overall funding mechanism (as well as its failure to fund interest payments); Section 3(6) is void as an impairment of contract. The State argues that this section is essential to the viability of the entire bill; that severability is not possible. Because the bill contains no alternative funding, the additional benefits would simply be paid out of the PERS fund until the fund was depleted. This is an untenable solution and one that clearly would not have been intended by the legislature. Since the offensive provision is not severable, the entire bill is void and must not be implemented.

"* * * The appropriate remedy at this juncture is an injunction against the implementation of the payments under HB 3349 and against the collection of additional contributions from the local employers to fund these payments.

"* * * [HB 3349] would violate the State's contract both with the Local employers and with the PERS participants by using dedicated funds for a non-dedicated purpose. * * * Accordingly, the state is enjoined from seeking contribution from local defendant employers and from using dedicated

PERS funds to remedy the breach." (Citation omitted; emphasis in original.)

In January 1996, the trial court entered two orders, to correspond with each letter opinion:

In the first order, the trial court dismissed the state's and plaintiffs' claims against local defendants. The order declared that only the state was responsible to plaintiffs for compensation for the breach of contract that resulted from taxing plaintiffs' PERS benefits. The order enjoined the state from seeking contribution from local defendants for the cost of compensating plaintiffs for the state's breach. The order also declared that the state may not use PERF monies to compensate plaintiffs as a result of the state's breach and enjoined the state from using PERF monies in that manner.

In the second order, the trial court issued an injunction against the implementation of HB 3349.

The trial court then entered a final judgment in accordance with those orders, pursuant to ORCP 67 A. Plaintiffs and the state filed notices of appeal in a timely manner. Pursuant to Oregon Laws 1993, chapter 752, the Court of Appeals certified those appeals to this court, and we accepted the certification.[9] The parties and we agree that, as to the claims discussed in this case, there exist no genuine issues of material fact. The disputed issues involve only questions of law.

As our analysis below will make clear, defendant class is composed of three distinct subclasses: (1) the state as a participating PERS employer; (2) local defendants that have express contractual agreements with the state that

---

[9] Oregon Laws 1993, chapter 752, provides for expedited review of actions "based on [a] contract right[ ] of a plaintiff and that arise[ ] out of the taxation of a retirement allowance or other benefit paid through the Public Employes' Retirement System to or on behalf of former employees of the state or other public employer of the state."

Notwithstanding that statutory provision, we recognize that resolution of the issues presented in this case has not been speedy. The decision in *Hughes* was issued five years ago. Plaintiffs initiated this action more than three years ago. The complex nature of the issues presented to the trial court here, and the number of parties involved, precluded rapid resolution of the issues presented. Moreover, the enactment of HB 3349 after the trial judge had issued a letter opinion had the effect of sending the litigation back to the starting blocks in 1995.

allegedly are being breached or impaired by the state; and (3) local defendants that allege that they have a statutory agreement with the state that is being breached or impaired by the state. For the sake of clarity, we address plaintiffs' claims and defendants' cross-claims as they pertain to each subclass.

## II. THE STATE AS A PARTICIPATING PERS EMPLOYER

The state admits that it has breached a statutory contract to provide PERS benefits free from state income taxation "[w]ith respect to * * * its former employees who were employed in PERS-covered positions, only, and with respect to PERS benefits that had accrued or were accruing before September 29, 1991, only." In other words, in response to plaintiffs' pleadings, the state has admitted its liability to its own former employees. That issue has been resolved on the pleadings, and no party brings it to us for review. Accordingly, the issue of the state's liability to *its own former employees* is not before this court.

The state argues that SB 656 and HB 3349 fully compensate its former employees for the damages due to them under this court's decision in *Hughes*. Stovall plaintiffs concede that implementation of those acts would constitute a complete remedy[10] for the breach of contract of which they complain. Chess plaintiffs do not so concede. As we discuss below, 324 Or at 126, the completeness of the remedies provided in those acts is not before us. Accordingly, as to Chess plaintiffs that were former employees of the state, that is an issue that will have to be resolved on remand.

The state also argues that the use of PERF monies to compensate its former employees, as provided in SB 656 and HB 3349, is legal and constitutionally valid. Plaintiffs do not contend otherwise. Accordingly, as between the state and its own former employees, the validity of SB 656 and HB 3349 is not at issue.[11]

---

[10] We use the term "complete remedy" here to refer to a remedy that would compensate plaintiffs fully for the damages due to them under this court's decision in *Hughes*.

[11] Because the issue is not before us in this case, we do not decide whether the state can use PERF monies to compensate its own former employees.

### III. MULTNOMAH COUNTY AND PORTLAND SCHOOL DISTRICT 1J AS EMPLOYERS

As stated above, Multnomah County and Portland School District 1J have express written contracts with the state that those defendants argue were breached or impaired when the legislature passed HB 3349. Those defendants argue that HB 3349 §§ 3(6) and 5(8), which require them to fund the increased benefits provided to plaintiffs in that act, affect a substantive term of the written contracts. More specifically, those defendants argue that the state, through PERS, agreed to assume all their liabilities for any claims that pertain to retirement issues.

The contract on which Multnomah County relies is between that county and the Public Employes' Retirement Board (PERB); it was signed in January 1982. Under that contract, Multnomah County and its employees agreed to integrate retroactively into PERS, effective July 1, 1981. The contract provides in part:

"It is agreed that the assets [of Multnomah County's then-existing retirement fund] transferred pursuant to * * * this Agreement shall be transferred subject to the following actual and contingent liabilities including costs and attorney's fees which shall constitute charges, immediate or prospective, against County retirement fund assets, or the Multnomah County employer account, and which shall be assumed and defended by PERS:

"(a)   retirement benefits to be received by County retirees, irrespective of date of retirement * * *

"(b)   all pending and threatened litigation * * *

"(c)   future claims and litigation arising out of or in connection with retirement issues generally[.]"

The pertinent portion of the contract on which Portland School District 1J relies contains similar terms. That contract, entered into in June 1984, is among that school district, the Teachers' Retirement Fund Association of School District No. 1 (TRFA) (the district's then-extant retirement fund), and PERS. Under it, Portland School District 1J and TRFA agreed to integrate into PERS effective July 2, 1984. The contract also provides:

"PERS agrees that it shall indemnify and hold harmless TRFA and its Trustees, employees and agents and shall assume and discharge out of the appropriate employer reserve the following actual and contingent liabilities arising from the scope of their employment, including costs and attorneys' fees, which shall constitute charges, immediate or prospective, against such reserve, which shall be assumed and defended by PERS:

"(1) Retirement, death, disability, withdrawal or related benefits to be received by TRFA retirees or TRFA/PERS members, irrespective of date of retirement, as required by law and according to the administrative provisions hereafter set forth;

"(2) All pending and threatened litigation.

"(3) Future claims and litigation arising out of or in connection with retirement issues generally."

By statute, the legislature had authorized defendants Multnomah County and Portland School District 1J to enter into the foregoing written contracts with the state. *See* ORS 237.051 (1981 & 1983) (so providing). The statute did not limit the terms to which the parties could agree.[12] Thus,

---

[12] The agreement among PERS, TRFA, and Portland School District 1J was entered into pursuant to ORS 237.051(3) (1983). That statute provided that school districts could integrate their current employment retirement plans into PERS. That statute allowed PERB, the local school board, and the local teachers' association to set the terms of the contract. *See* ORS 237.051(3)(a) (1983) (providing that "[a] proposed form of contract setting forth all the terms, conditions and provisions of the integration shall be prepared by, and adopted by a majority vote of, the board of trustees of the association and approved by the board of directors of the school district in which the association is organized"). The proposed contract then required approval by two-thirds of the association's members, ORS 237.051(3)(b), (c) (1983), and PERB, ORS 237.051(d) (1983). There was no ceiling set on the terms to which the association and school board could agree; however, the statute did provide that the agreement could not impair benefits that the association members would have received under their pre-integration retirement system. ORS 237.051-(3)(e) (1983).

The agreement between Multnomah County and PERB was entered into pursuant to ORS 237.051 (1981). That statute provided that employees of political subdivisions of the state could integrate their current employment retirement plans into PERS whenever "two-thirds of them and their employer, through its governing body, so apply." ORS 237.051(1) (1981). That statute allowed PERB and the employer to set the terms of the contract. *See* ORS 237.051(1)(b) (1981) (noting that integration may occur "upon such terms as are set forth in a contract between [PERB] and the employer"). There was no ceiling set on the terms to which PERB and the employer could agree; however, the statute did provide that the agreement

the legislature gave those defendants the statutory authority to enter into written contracts, including ones that defined the scope and terms of the parties' obligations in relation to employees' retirement benefits. Local defendants Multnomah County and Portland School District 1J read the terms of those contracts too broadly, however.

■    In the contract between Multnomah County and the state, the state agreed to "assume and defend" present and future liabilities incurred "against *County retirement fund assets, or the Multnomah County employer account.*" (Emphasis added.) Also, only the *existing* assets were transferred "subject to" the listed liabilities. In other words, the state agreed to "assume and defend" liabilities that Multnomah County's then-extant *retirement funds* had or may have had to County employees who were members of those retirement systems. Nothing in the contract provides that the state, through PERS, agreed to indemnify *Multnomah County* for *all* liabilities that might arise between it and its employees concerning *future* PERS issues.

■    Similarly, in the contract among PERS, TRFA, and Portland School District 1J, the state, through PERS, agreed to "indemnify and hold harmless *TRFA and its Trustees, employees and agents.*" (Emphasis added.) The state did not agree to "indemnify and hold harmless" Portland School District 1J, which also was a party to the contract. It is clear from the words of that contract that the state agreed to "indemnify and hold harmless" only the school district's then-extant retirement fund as to liabilities that that fund had or may have had to district employees who were members of that retirement fund.

The arguments made by Multnomah County and Portland School District 1J, based on express written contracts, are not well taken.

could not "reduce or impair" benefits that the employees would have received under their preintegration retirement system. ORS 237.051(2) (1981).

## IV. LOCAL DEFENDANTS AS PARTICIPATING PERS EMPLOYERS

We next address plaintiffs' claims and local defendants' counterclaims that pertain generally to local defendants as participating PERS employers.

A. *Statutory Contracts between the State and Political Subdivisions of the State, under Article I, Section 21, of the Oregon Constitution.*

■    Local defendants first argue that the repeal of the tax exemption and the enactment of HB 3349 impair or breach a statutory contract or contracts between local defendants and the state. A "statutory contract" exists when the legislature enacts a statute that "reveal[s] an underlying legislative intent to enact and protect *contract* rights." *Hughes*, 314 Or at 19 (emphasis in original).

■    The Contracts Clause of Article I, section 21, of the Oregon Constitution, prevents the state from impairing contracts. *See Eckles v. State of Oregon*, 306 Or 380, 387, 760 P2d 846 (referring to the Contracts Clause in Article I, section 21, as "forbidding laws impairing the obligation of contracts"), *appeal dismissed* 490 US 1032 (1988). That limitation applies to contracts between private parties, as well as to contracts between the state and a private party. *Id.* at 390.

In response to local defendants' claim that they have an enforceable *statutory* contract with the state, the state and plaintiffs make two main arguments. First, they respond, as a matter of law, local defendants cannot enforce statutory contracts with the state. Second, they argue in the alternative that no statutory contract exists in the particular circumstances here. Because we agree with the first argument, we do not address the second.

In *Hughes*, this court described the proper approach for determining whether a state law violates Article I, section 21, as follows:

"First, it must be determined whether a contract exists to which the person asserting an impairment is a party; and,

second, it must be determined whether a law of this state has impaired an obligation of that contract. * * *

"In cases where the state is alleged to be a party to the contract, however, courts have developed a number of additional rules. In *Eckles*, this court detailed the nature and origins of those rules. Briefly, those rules are: (1) a state contract will not be inferred from legislation that does not unambiguously express an intention to create a contract; (2) the Contract Clause does not limit the state's power of eminent domain; and (3) the state may not contract away its 'police power.' Those rules are not necessarily exhaustive of possible limitations on state contracts under Article I, section 21, but any further rules of this nature 'must be found within the language or history of Article I, section 21, itself.' " 314 Or at 14 (citations omitted; footnote omitted).

■ In this case, the state and plaintiffs ask that we recognize another rule applicable to state contracts under Article I, section 21: that a statutory contract between the state and its political subdivisions as to matters of statewide public concern never can be enforced under Article I, section 21. This court has not decided that issue previously. In order to determine whether that rule exists and is applicable, we turn to the "language and history" of the Contracts Clause. *Id.* at 14 (stating how court finds applicable rules).

In *Eckles*, this court described the pertinent language and history of Oregon's constitutional Contracts Clause as follows:

"Unlike many of the provisions in Article I of the Oregon Constitution, the provision in section 21 against impairing the obligation of contracts has its ultimate source not in the early state and colonial constitutions but in the Constitution of the United States, Article I, section 10, clause 1, and the Northwest Ordinance of 1787. * * *

"We infer from the similarity of language and from the parallels drawn between the constitutional provisions by the predecessor of this court that the framers of the Oregon Constitution intended to incorporate the substance of the federal provision, as it was then interpreted by the Supreme Court of the United States, into the Oregon Constitution, though not necessarily every case decided under the federal provision. Subsequent Supreme Court of the

United States decisions, of course, do not control the interpretation of section 21, although those decisions may shed light on the early history of the federal provision, and thereby on the Oregon provision." 306 Or at 389-90 (citations omitted).

In *State of Maryland v. Baltimore & Ohio Railroad Co.*, 44 US (3 How) 534, 11 L Ed 714 (1845), the Supreme Court of the United States appeared to reject the argument that a political subdivision of the state could use the federal Contracts Clause to enforce a statutory contract between that subdivision and the state. In that case, a county in Maryland sued the state, alleging that a state statute impaired a contract between the state and the county. The state legislature had passed an act that provided that the state would pay a railroad company $3 million to build a railroad from Baltimore to the Ohio River. The railroad company could decide on the route that the railroad line would take. However, if the line did not pass through three named towns, two of which were in Washington County, the railroad would "forfeit $1,000,000 to the state for the use of Washington county." 44 US at 548.

The railroad line was built, but the line did not pass through the specified towns. The state, "at the instance of the commissioners of Washington county," brought an action to recover $1 million. After the action was filed, the legislature amended the act by repealing the part of it that required the railroad to return the money to the state for the use of Washington County. Washington County argued that that money was due to it, by statutory contract, and that the state had impaired or breached that statutory contract by amending the act. *Id.* at 549.

The Supreme Court rejected the argument that the county was a party to the particular statutory contract with the state. *See ibid.* ("even if the provisions upon this subject in the act * * * could be regarded as a contract with the railroad company, it would be difficult to maintain that the county was a party to the agreement or that it acquired any private or separate interest under it, distinct from that of the state"). The Court also rejected the argument that the county *could* enter into a statutory contract with the state that could

be enforced through the Contracts Clause. In reaching the latter conclusion, the Court stated:

"The several counties are nothing more than certain portions of territory into which the state is divided for the more convenient exercise of the powers of government. They form together one political body in which the sovereignty resides. And in passing the [act], the people of Washington county did not and could not act as a community having separate and distinct interests of their own, but as a portion of the sovereignty." *Id.* at 550.

In other words, the Court reasoned, the legislature and the county could not have entered into a statutory contract enforceable under the Contracts Clause, because the county, as a public body, could acquire no private interest in the forfeiture and, therefore, had no interest that the Contracts Clause could protect.

In *East Hartford v. Hartford Bridge Co.*, 51 US (10 How) 511, 13 L Ed 518 (1850), the Supreme Court again addressed the nature of the relationship between a state and its political subdivisions. In that case, the Town of East Hartford, Connecticut, had been given a grant, by legislative enactment in 1783 and 1806, to operate a ferry across the Connecticut River. In 1808, the legislature incorporated the Hartford Bridge Company for the purpose of building a bridge over the Connecticut River. Part of the 1808 act provided that the incorporation of the Hartford Bridge Company would not affect East Hartford's rights to keep the ferry. Sometime before 1818, a bridge was built, but it became impassable. In 1818, the legislature passed an act that provided that, after the bridge was repaired, "the ferries by law established" would be discontinued and "never be permitted to transport passengers across said river." In 1836, the legislature repealed that provision of the 1818 act. In 1841, the 1836 act was repealed. In 1842, the 1841 act was repealed, thus restoring to East Hartford the right to use and operate the ferry. 51 US at 519-20.

The Hartford Bridge Company sought an injunction against East Hartford to prevent it from operating the ferry, and the Connecticut courts granted such an injunction. East Hartford appealed, arguing that the city and the state had

entered into a contract granting the city a permanent right to operate the ferry. East Hartford argued that subsequent legislation repealing that grant, as well as the court order enjoining the city from operating the ferry, impaired the city's contract in violation of the Contracts Clause. *Id.* at 532. The Supreme Court rejected that argument:

"[T]he parties to this grant did not by their charter stand in the attitude towards each other of making a contract by it, such as is contemplated in the Constitution, and as could not be modified by subsequent legislation. The legislature was acting here on the one part, and public municipal and political corporations on the other. They were acting, too, in relation to a public object, being virtually a highway across the river, over another highway up and down the river. From this standing and relation of these parties, and from the subject-matter of their action, we think that the doings of the legislature as to this ferry must be considered rather as public laws than as contracts. They related to public interests. They changed as those interests demanded. The grantees, likewise, the towns being mere organizations for public purposes, were liable to have their public powers, rights, and duties modified or abolished at any moment by the legislature.

"\* \* \* \* \*

"Hence, generally, the doings between them and the legislature are in the nature of legislation rather than compact, and subject to all the legislative conditions just named, and therefore to be considered as not violated by subsequent legislative changes.

"It is hardly possible to conceive the grounds on which a different result could be vindicated, without destroying all legislative sovereignty, and checking most legislative improvements and amendments, as well as supervision over its subordinate public bodies.

"Thus, to go a little into details, one of the highest attributes and duties of a legislature is to regulate public matters with all public bodies, no less than the community, from time to time, in the manner which the public welfare may appear to demand.

"It can neither devolve these duties permanently on other public bodies, nor permanently suspend or abandon them itself, without being usually regarded as unfaithful,

and, indeed, attempting what is wholly beyond its constitutional competency.

"It is bound, also, to continue to regulate such public matters and bodies, as much as to organize them at first. Where not restrained by some constitutional provision, this power is inherent in its nature, design, and attitude; and the community possess as deep and permanent an interest in such power remaining in and being exercised by the legislature, when the public progress and welfare demand it, as individuals or corporations can, in any instance, possess in restraining it.

"\* \* \* \* \*

"The public character of all the parties to this grant, no less than its subject-matter, seems, therefore, to show, that nothing in the nature of a contract, with terms to be fulfilled or impaired like private stipulations, existed in this case so as to prevent subsequent interference with the matter by the legislature, as the public interests should appear to require.

"But in order to justify the plaintiff in what it set up below, there must not only have been a contract, or *quasi* contract, but a violation of its obligation. It will therefore be useful to follow out farther the nature and conditions of this supposed contract, in order to throw more light on both the questions whether this grant was such a contract as the Constitution contemplates, and whether it has been at all impaired. The authority of a legislature may probably supersede such a ferry as is public \* \* \* by allowing a bridge over the same place, as has before been virtually held by this court. It could also alter or abolish wholly the public political corporation to which the grant was made, as this is yearly done in dividing towns and counties, and discontinuing old ones. It is therefore clear, that, whatever in the nature of a contract could be considered to exist in such a case, by a grant to a town of some public privilege, there must be implied in it a condition, that the power still remained or was reserved in the legislature to modify or discontinue the privilege in future, as the public interests from time to time appear to require.

"\* \* \* \* \*

"The legislature, in making the discontinuance, did only what it supposed was advantageous to the public, by securing a better, quicker, and surer method of passing the river on the bridge; and it thus appears to have violated no condition or terms of any contract or *quasi* contract, if it had made any with the plaintiff.

"On the contrary, as before suggested, the legislature merely acted within its reserved rights, and only passed a new law on a public subject, and affecting only a public body." *Id.* at 533-37 (citations omitted; emphasis in original).

Thus, in *East Hartford*, the Supreme Court explicitly stated that the federal Contracts Clause was inapplicable to claims by political subdivisions of the state that they had contract rights arising from state statutes and were protected, under the Contracts Clause, from later modifications of those statutes. Rather, for Contracts Clause purposes, the Court viewed political subdivisions of a state, created by the state, as subject to the will of the state in matters relating "to a public object." *Id.* at 533.

*Baltimore Railroad* and *East Hartford* establish the proposition that, before adoption of the Oregon Constitution, the United States Supreme Court had interpreted the federal Contracts Clause to be inapplicable to enforce alleged statutory contracts between a state and its subdivisions. As discussed above, 324 Or at 112-13, the framers of the Oregon Constitution intended to incorporate the substance of the federal provision, as theretofore interpreted by the United States Supreme Court, into the parallel provision of the Oregon Constitution. *Eckles*, 306 Or at 389-90.

A later decision by this court suggests specifically that the foregoing federal interpretation was incorporated into the Oregon Contracts Clause. In *Miller v. Henry*, 62 Or 4, 5-6, 162 P 197 (1912), a taxpayer sought to enjoin an Oregon law that precluded taxpayers from bringing certain actions against Union County officials. Those officials had deposited county funds in a bank that later failed; as a result of the bank's failure, the county received only 55 percent of the funds deposited. The taxpayer argued, in part, that the act violated "Article I, § 21, which prohibits the passage of any

law impairing the obligations of a contract." *Id.* at 7. This court rejected the argument:

> "It is contended that the bond of the treasurer is a contract with the county, and that this act releases him from the obligation of the bond, and therefore impairs the obligation of the contract. We cannot assent to this view of the law. A county is a subdivision of the State, created by the legislature for administrative purposes, and except as limited by the constitution is subject at all times to legislative control. * * * The legislature might in the first instance have directed that county funds be deposited in banks, and in such event, that the treasurer should not be liable for their loss or diminution. What the legislature can do in the first instance it can afterwards ratify. Its action does not involve a question of power, but of public policy, of which it must be the sole judge." *Id.* at 7-8.

Although this court did not cite the United States Supreme Court's decisions in *Baltimore Railroad* and *East Hartford* in reaching its conclusion in *Miller*, it is apparent from the quoted passage that the court applied the same reasoning in *Miller* that the United States Supreme Court had applied in *Baltimore Railroad* and *East Hartford*. That is, for state Contracts Clause purposes, political subdivisions of the state are subject to the will of the state and, as to legislation relating "to a public object," *East Hartford*, 51 US at 533, directed at political subdivisions, those subdivisions are unable to rely on the protection provided by the state Contracts Clause.

The foregoing principles apply equally to "home rule" jurisdictions.[13] In *Kinney v. Astoria*, 108 Or 514, 217 P 840 (1923), this court upheld the validity of a statute against a variety of state constitutional challenges. The statute in question appropriated funds in each of seven years, to help the City of Astoria to rebuild after a devastating fire. 108 Or at 519-21. The amount of the annual appropriation was

---

[13] Article XI, section 2, of the Oregon Constitution, provides in part:

"The Legislative Assembly shall not enact, amend or repeal any charter or act of incorporation for any municipality, city or town. The legal voters of every city and town are hereby granted power to enact and amend their municipal charter, subject to the Constitution and criminal laws of the State of Oregon * * *."

measured by the amount of state taxes collected from persons and upon property within the corporate limits of Astoria, not to exceed the amount appropriated in 1923. *Id.* at 522. The court began its analysis by noting that the state constitution limits power, whereas the federal constitution grants power, and that all questions of public policy are for the state legislature except as controlled by constitutional limitations. *Id.* at 523-24. In responding to the argument that the home rule amendment was evidence that the appropriation was for a private, not a public, purpose, the court stated:

"Pure municipal corporations, such as cities, are merely instrumentalities of the state established for the convenient administration of local government; they are state governmental agencies; they are auxiliaries of the state for the purpose of local self-government; they are mere political subdivisions of the state created by authority of the state for the purpose of exercising a part of its powers * * *.

"It is true that under the present form of our state Constitution cities and towns may adopt their own charters and the legislative assembly cannot by a special law enact, amend or repeal the charter of a particular town, but it is also true that the legislature may enact a general law affecting cities and towns and the electors of the state may in the exercise of the initiative by either general or special laws enact, amend or repeal municipal charters. However, conferring the power of the initiative upon cities and towns and prohibiting the legislative assembly from enacting special laws and reserving to the electors of the state the right to enact either special or general laws did not divorce cities and towns from control by the state nor change their character as governmental agencies of the state." *Id.* at 528-29 (citations omitted).

The statutes on which local defendants rely to establish a statutory contract here pertain "to a public object" within the meaning of the cited Contracts Clause cases. Although the context was different, this court discussed the "public object" of PERS in *LaGrande/Astoria v. PERB*, 281 Or 137, 576 P2d 1204, *aff'd on reh'g* 284 Or 173, 586 P2d 765 (1978). In that case, the court held that a state law that required certain local government employees to be brought within PERS, unless the particular public employer provided them with equal or better retirement benefits, did not violate

Article I, section 2. The court observed that the challenged law was a "general law addressed primarily to substantive social, economic, or other regulatory objectives of the state." 281 Or at 156. More specifically, the challenged portions of HB 3349 do not address the powers of local governments. *See id.* at 156-57 ("The provisions for financial security for police officers and firemen and their dependants in the event of retirement, disability, or death address a social concern with the living standards of these classes of workers, not with local governments as such.").

We conclude that Article I, section 21, of the Oregon Constitution, does not provide local defendants with protection from the state's alleged impairment of a claimed statutory contract. Similarly, Article I, section 21, of the Oregon Constitution, does not provide local defendants with a remedy for any breach of a claimed statutory contract. *See Eckles*, 306 Or at 401 (noting that, when the state breaches its contracts pertaining to financial interests, "Article I, section 21, protects contractual interests by obliging the state to compensate for its breach of those contracts"). Local defendants' statutory contract argument, therefore, is not well taken. The trial court erred by holding that local defendants can enforce an alleged statutory contract with the state. Similarly, local defendants' third-party beneficiary arguments are not well taken, because those arguments depend on the existence of a statutory contract between the state and local defendants. Accordingly, the trial court erred when it held that plaintiffs were third-party beneficiaries of a contract between local defendants and the state and that plaintiffs have the right to enforce such a contract.

B. *Local Defendants' Liabilities as Participating PERS Employers.*

■ Our disposition of local defendants' contract arguments does not resolve all of plaintiffs' claims. Plaintiffs argue that they had contracts of employment with their political subdivision employers; that one of the terms of those contracts was that they would receive PERS retirement benefits free from state income taxation; and that local defendants have breached those contract terms. Plaintiffs seek damages

for that breach. Plaintiffs also seek a declaration as to who ultimately is liable to them for the breach.

Local defendants argue that they cannot be held responsible for a breach of contract to provide retirement benefits free from state income taxation. They reason that only the state determines what income is taxed. They then conclude that only the state may breach a contract term that provides that income (or benefits) will be free from taxation.

Local defendants misconstrue the nature of their obligation under PERS. Accordingly, they misunderstand their obligation to contribute to PERS and their obligation to their employees.

A PERS participating employer is required to contribute to PERS "such amounts as are actuarially computed to be necessary, as determined by [PERB], to adequately provide the benefits to be provided by the contributions of the employer under this chapter." ORS 238.225. *See generally* ORS 238.225 (delineating a participating employer's duties to contribute). Participating PERS employers also are obligated to contribute their *pro rata* share of amounts necessary to maintain the administrative expenses of PERS. ORS 238.610(1), (3). The employee of a participating employer is then entitled to receive retirement benefits in proportion to that employee's individual contributions and "the contributions of employers." ORS 238.300(1), (2).

Employer contributions are placed in PERF, which is a "trust fund, separate and distinct from the General Fund," established for the purpose of providing benefits to PERS members. ORS 238.660(1). Participating PERS employers "have no proprietary interest in the fund or in the contributions made to the fund." ORS 238.660(2). In other words, participating employers contribute to the fund not for their own sake, but for the sake of their employees.

Under the PERS statutes, then, with regard to PERS participating employers, a two-step system exists for the collection and distribution of PERS monies. At the first step, PERB determines the amounts necessary to provide

PERS members of a participating employer with their benefits, as well as to provide for the *pro rata* share of administrative expenses of PERS. PERB assesses the resulting amount against the participating employer. The employer then contributes the assessed amount to PERF. At the second step, when an employee of a participating PERS employer retires, PERB distributes those benefits to the employee.

When the PERS statutes are viewed in that light, local defendants' argument, that the state is under an obligation to fund plaintiffs' *Hughes* remedy for retirees who worked for local defendants, loses viability. The participating employer, be it a local government or an agency or department of the state, always is responsible for covering its share of its employees' retirement compensation and of the administrative expenses of PERS. The statutes thus suggest (and always have suggested) that the compensation that flows to employees in the form of retirement benefits flows from the participating employers, albeit indirectly.

The extent to which a participating PERS employer is obligated to contribute to PERS depends on PERB's determination of how much is needed to fund the system to comport with the benefits delineated in the pertinent PERS statutes. *See* ORS 238.225 (so stating). That amount is not static, but depends on various factors. As to some of those factors, the legislature has no control (*e.g.*, the rate of return that PERF earns on its investments). As to others, the legislature (within constitutional limits) has exclusive control (*e.g.*, the level of benefits to which a PERS member is entitled). *See Ragsdale v. Dept. of Rev.*, 321 Or 216, 231, 895 P2d 1348 ("[t]he state is entitled to raise the level of taxable compensation of [PERS members], *for whatever reason,* including to compensate them for a change in the tax laws that results in a decreased level of net after-tax income" (emphasis in original)), *cert den* 116 S Ct 569 (1995); *but see Oregon State Police Officers' Assn. v. State of Oregon*, 323 Or 356, 371, 918 P2d 765 (1996) (under federal Contracts Clause, state cannot diminish vested pension rights after acceptance of employment). What is static under the PERS statutes is a participating employer's obligation to pay to PERF amounts sufficient to cover that employer's obligation to fund its employees' retirement benefits and to administer PERS.

That obligation was part of the PERS statutes before the passage of SB 656 and HB 3349. *See* ORS 237.081 (1989) (duty to fund PERS benefits); ORS 237.291(1), (2) (1989) (duty to fund administrative needs of PERS). Moreover, the means by which monies are distributed to retirees has not changed. *See* ORS 237.147 (1989) (describing distribution). The nature of PERF as a "trust fund" and the PERS participating employer's lack of proprietary interest in that fund were existing aspects of PERS before the passage of the 1991 and 1995 acts. *See* ORS 237.271(1), (2) (1989) (providing that PERS is a trust fund and that participating employers have no proprietary interest in that fund).

In other words, under PERS, before the enactment of the 1991 and 1995 acts challenged by local defendants, local defendants were obligated to fund PERS on behalf of their employees and to fund the administrative needs of PERS. They had to contribute amounts determined by PERB, to support payment levels set by the legislature. Neither the amount that participating employers were obligated to fund, nor the amount that retirees were entitled to receive, was fixed by those statutes. Rather, participating employers were under an obligation to fund their employees' benefits in amounts determined by PERB to cover benefit levels set by the legislature.

Accordingly, we agree with plaintiffs that their own employers, including the state where appropriate, were the entities that were obligated to fund their retirement compensation. Their own employers were the entities that agreed to the terms of their compensation, including the terms relating to retirement benefits. That is no less true by reason of legal requirements setting some terms of compensation by statute. (An employer that hires an employee is responsible for paying the minimum wage, even though it is the state or the federal government that sets that wage by statute.)[14]

---

[14] Plaintiffs argue that, in *Hughes*, this court stated that the breaching party, "the state," consisted of both the state and the political subdivisions of the state that are PERS employers. In support of that argument, plaintiffs rely on two footnotes in *Hughes*.

First, in a footnote at the outset of *Hughes*, the court stated:

"Petitioners in this case are present and retired public employees (or their representatives) of the state and its political subdivisions. The primary

That conclusion answers the question of which party—the state or local defendants—was obligated to provide plaintiffs with tax-free PERS benefits. As we have explained, participating PERS employers *provide and fund* the benefits; PERF and PERB act as a *conduit* through which those benefits pass. The retirees' former employer, whether the employer be a local government or the state in its capacity as a participating PERS employer, must pay to PERF whatever those retirees are entitled to receive. *See* above, 324 Or at 121-22 (discussing operation of PERS statutes).

We note that, under basic principles of contract law, if A makes a promise to B that C will perform a certain act, and if C does not so perform, A is liable to B for C's failure to perform. *See McGrath v. Electrical Const. Co.*, 230 Or 295, 304, 364 P2d 604, 370 P2d 231 (1962) ("One who makes a promise which can not be performed without the cooperation of a third person is not excused from performance because of inability to secure the required cooperation."); *see also Restatement (Second) of Contracts* § 71 cmt *e*, illus 14, at 176 (1981) (stating that consideration may flow from one person to another for performance by a third person). Regardless of the reason that led local defendants to participate in PERS, local defendants, as participating PERS employers, themselves promised plaintiffs that plaintiffs would receive, at a minimum, the retirement compensation provided in the PERS statutes. Plaintiffs accepted that term by working for their employers. *See Hughes*, 314 Or at 20 (PERS constituted

---

respondent is the State of Oregon. *Throughout this opinion, we refer to the employer-employee relationship of 'the state' and 'its employees.' Those references are merely convenient terms for all public employers, whether the employer be the state or one of its political subdivisions, and their respective public employees who are parties to this case." Id.* at 5 n 3 (emphasis added).

In a second footnote, the court stated:

"Our references to petitioners' 'contract with the state' or their 'PERS contract' in this opinion are merely shorthand terms for the various groups of petitioners, who work for different levels of government, and the contracts they each have with their respective PERS participating employers." *Id.* at 6 n 5.

Plaintiffs' reliance on those footnotes is misplaced. Those footnotes were nothing more than a rhetorical device to make the opinion more concise and readable. The issue presented in this case—whether local defendants have a contract with plaintiffs to provide plaintiffs with tax-free PERS benefits—was not raised or briefed by the parties in *Hughes*. Nor was resolution of that issue necessary to the decision in *Hughes*.

an offer for a unilateral contract). *See also* Or Const, Art XI, § 8 ("The State shall never assume the debts of any county, town, or other corporation whatever, unless such debts, shall have been created to repel invasion, suppress insurrection, or defend the State in a war."); *Stoppenback v. Multnomah County*, 71 Or 493, 502, 142 P 832 (1914) (Article XI, section 8, "relates to a class of debts in contracting which the state originally takes no part").

In conclusion, local defendants are liable to plaintiffs for the breach of contract identified in *Hughes*. The trial court erred when it dismissed plaintiffs' claims for breach of contract against local defendants.

C. *Local Defendants' Challenge to the Validity of SB 656 and HB 3349.*

In *Hughes*, this court did not fashion a remedy for the breach of contract that had resulted from the legislature's decision to subject to income taxation PERS retirement benefits accrued or accruing before the effective date of SB 656. 314 Or at 33 n 36. As we have discussed, in 1991, the legislature enacted SB 656; and, in 1995, the legislature passed HB 3349. Both of those acts increased the retirement benefits that plaintiffs would receive.

The increases enacted by the legislature in 1991 were not based "on actual or even potential tax liability. That is to say, there is no mathematical correlation between taxes and the benefits created in 1991." *Ragsdale*, 321 Or at 221. Yet, it is apparent from the context of that act that the legislature intended for those increased benefits to compensate PERS retirees for the loss of the tax exemption. *See* SB 656, § 12(1) ("the increased benefits [provided] * * * by * * * this Act * * * shall not be paid in any tax year in which the retirement benefits payable under [PERS] are exempt from Oregon personal income taxation"). The same issue motivated the 1995 legislature. *See* HB 3349, § 2(1) (stating that the increases provided in that act are intended to be "in compensation for damages suffered" as a result of the breach of contract discussed by this court in *Hughes*).[15]

---

[15] Local defendants argue that the increased compensation provided by SB 656 and HB 3349 should be characterized as damages, not benefits. For local

Plaintiffs and the state seek a declaration from this court as to the validity of the 1991 and 1995 legislative enactments. Local defendants' challenges to the validity of the acts are based on an alleged *statutory* contract between the state and local defendants. As held above, local defendants are not entitled to rely on such a statutory contract. Accordingly, local defendants' arguments as to the invalidity of SB 656 and HB 3349 are not well taken.

*Stovall* plaintiffs concede that implementation of HB 3349 would constitute a complete remedy to that plaintiff class. *Chess* plaintiffs do not concede that point. The completeness of the remedy provided in HB 3349 is not before this court; in the light of its disposition of this case, the trial court did not consider or rule on the issue, and the parties have not asked us to do so. Accordingly, as to *Chess* plaintiffs, that is an issue that will have to be resolved on remand.

D. *Local Defendants' Remaining Arguments.*

As noted, local defendants have raised a number of cross-claims against the state. Those claims are: (1) that the state breached "the covenant of good faith and fair dealing implied in the PERS contract between the state and participating employers"; (2) that the state breached a fiduciary duty owed to local defendants; (3) that the state is liable to contribute to local defendants all sums that they may have to pay to plaintiffs; (4) that the state should be required to indemnify local defendants for all damages that they may have to pay to plaintiffs; (5) that the state will be unjustly enriched if local defendants are held liable; and (6) that SB 656 and HB 3349 are unconstitutional taxes under Article I, section 32, and Article IX, section 1, of the Oregon Constitution, and that those acts violate the equal privileges and immunities clauses of Article I, section 20, of the Oregon Constitution.

---

defendants, that distinction is important because, if the state has a *statutory* contract with local defendants to provide plaintiffs with tax-free benefits, and the state has breached that contract by taxing plaintiffs' benefits, then, in HB 656 and SB 3349, the state is making local governments pay a debt that is a debt of the state.

Because of our holdings above—that there is no enforceable *statutory* contract between the state and local defendants and that local defendants, not the state, have breached a contract with plaintiffs—we need not address local defendants' argument as to whether the increased benefits provided in SB 656 and HB 3349 properly are labeled "damages" or "benefits."

Defendant League of Oregon Cities has asked that we remand the case for additional briefing and argument as to these remaining claims, if we determine that there is no enforceable statutory contract between the state and local defendants. For the most part, we agree that remand is appropriate for those claims that, although raised below, have not been briefed or argued to this court. However, the trial court expressly disposed of two of the claims that League of Oregon Cities now asks us to remand. For the sake of judicial economy, we address those claims of plaintiffs that were raised below, on which the trial court expressly ruled.

1. *Indemnity.*

■ ■ Local defendants' claims asserting common-law indemnity fail. In an action for common-law indemnity,

"the claimant must plead and prove that (1) he has discharged a legal obligation owed to a third party; (2) the defendant was also liable to the third party; and (3) as between the claimant and the defendant, the obligation ought to be discharged by the latter." *Fulton Ins. v. White Motor Corp.*, 261 Or 206, 210, 493 P2d 138 (1972).

As a matter of law, local defendants have failed to establish the second element. As we have explained, above, local defendants—not the state—are liable to plaintiffs for the breach of contract as to retirees who worked for local defendants. Therefore, the trial court erred when it ruled that local defendants were entitled to "indemnification from the state" on their common-law indemnification theory.

2. *Unjust Enrichment.*

■ ■ Local defendants' claims for unjust enrichment fare no better. Unjust enrichment is a theory of "quasi-contract" that depends on the existence of an implied contract. *See Derenco v. Benj. Franklin Fed. Sav. and Loan*, 281 Or 533, 557, 577 P2d 477 (describing the theory of unjust enrichment as being rooted in "quasi-contract: an obligation implied in law"), *cert den* 439 US 1051 (1978).

In *Hughes*, this court cautioned explicitly that it will not imply the existence of a statutory contract between the state and another party. *See* 314 Or at 17 ("a contract will not be inferred from * * * legislation unless it unambiguously expresses an intention to create a contract"). In the light of

that statement in *Hughes*, local defendants' request that we infer the existence of a statutory quasi-contract in the absence of an actual, enforceable statutory contract is not well taken. The trial court erred when it ruled that local defendants were entitled to relief from the state on a theory of unjust enrichment.

3. *Other Theories.*

Local defendants' remaining claims are that the state breached a contractual duty of good faith and fair dealing; that the state breached its fiduciary duty to local defendants; that the state must make contribution to local defendants for any money that they pay out as a result of *Hughes*; and that HB 3349 is unconstitutional for various reasons. Those claims shall be addressed by the trial court on remand.

## V. CONCLUSION

In summary, we hold:

(1)   Plaintiffs who were employees of the state are entitled to damages from the state, as a participating PERS employer, for breach of contract. The completeness of the remedy provided to Chess plaintiffs in SB 656 and HB 3349 shall be addressed by the trial court on remand.

(2)   There is no breach of an express contract between the state and Multnomah County or between the state and Portland School District 1J.

(3)   There is no enforceable statutory contract between the political subdivisions of the state and the state.

(4)   Local defendants have breached their contracts with plaintiffs to provide plaintiffs with PERS benefits free of state income taxation. Local defendants are liable to plaintiffs for the damages that have resulted from that breach.

(5)   SB 656 and HB 3349 are valid legislative enactments as against the particular claims made here by local defendants. The completeness of the remedies provided by those acts shall be addressed by the trial court on remand in *Chess*.

(6)   Local defendants' cross-claims for indemnity and unjust enrichment are not well taken. Local defendants'

remaining claims shall be addressed by the trial court on remand.

The trial court erred when it dismissed plaintiffs' and the state's claims with prejudice, declared that local defendants are not liable to plaintiffs, and declared that PERF monies may not be used to compensate plaintiffs for the breach of their contract. Thus, the trial court erred when it enjoined the implementation of HB 3349, enjoined the use of PERF monies to compensate plaintiffs, and ordered the state to provide restitution of any PERF monies depleted in accordance with those statutes.

The judgments of the circuit court are reversed. The cases are remanded to the circuit court for further proceedings.